WILLIAM COCHRANE V. HEZEKIA FARIS.

A purchaser of land at a sale by the administrator of one who had occupied it, using and cultivating and claiming it as his own, without title or color of title, or deed duly recorded, may, in pleading the Statute of Limitations, of ten years, tack his own possession to that of the deceased.

Where a person has occupied land, using and cultivating and claiming it as his own, without title or color of title, or deed duly recorded, he may continue his possession by his agent or by tenants using and cultivating it, and claiming it as the property of the principal or lessor, whether the lease be by parol or in writing.

Appeal from Polk. Tried below before the Hon. Peter W. Gray.

The land in controversy was about two hundred acres, part of Faris' headright. The bond from Hubert to Riley was not recorded. The facts are stated in the Opinion.

*J. B. & G. A. Jones*, for appellant.

*Yoakum & Branch*, for appellee.

HEMPHILL, CH J. This is an action of trespass to try title. The appellee, who was plaintiff below, alleged and produced in evidence a patent to himself for the land. The defendant (who is appellant in this Court) pleaded not guilty and adverse possession of the land for ten years. He proved that the land was surveyed in May or June, 1838, for Mat. Hubert; but there was no direct evidence of any privity of title or interest between Mat Hubert and the plaintiff, though the same witness who proved that the land was surveyed for Mat Hubert, testified that the land was always known as the plaintiff's headright. In January, 1840, R. L. Hubert entered upon the land. Mat Hubert in August, 1840, conveyed the land by bond to Charles Riley, stipulating that Riley should arrange with R. L. Hubert for his improvements. Riley succeeded R. L. Hubert, and entered into possession in 1840, and continued in possession by himself, his tenants or agent until his death in 1846 or 1847. There were a number of tenants between 1841 and 1846 or 1847, the time of Riley's death; and with respect to some, it was not very certainly proven that they held under Riley. But this is the fair conclusion from the facts and circumstances in proof, and they are sufficient to warrant the jury in finding and acting on such conclusion. When Riley left the land, in 1844, he appointed the defendant Wm. Cochrane as his agent in relation to the land, to rent, cultivate and enjoy it as such; and he either rented, or cultivated and possessed it himself as such agent, up to the time of Riley's death, and to the time of his purchase of the land in 1848 at a

public sale by the administrator of Riley; and as such pur-
chaser he continued to possess and cultivate the land up to
the commencement of this suit in October, 1851.

There was no interruption in the possession, though one
witness thinks the land was not cultivated in 1850 ; but even
then the fence was kept up round the orchard, which was in
itself an act of possession ; and if even that were not sufficient
possession, yet the ten years from the first of January, 1840,
were complete at the end of eighteen hundred and forty-nine.

There was no abandonment of the premises ; the possession
was all the time adverse to the plaintiff : and it is a fair deduc-
tion that there was a privity or connection between all the
tenants from the possession of R. L. Hubert under Mat Hubert
in 1840 down to that of the defendant at the commencement
of suit.   This is believed to be a fair summary of the evidence
and of the conclusions resulting from it, and I will now exam-
ine such portions of the charge as by the appellee are con-
sidered to be erroneous.

I will premise that there were three trials in this cause.   In
the first there was a verdict for the defendant.   In the second
there was a mistrial ; on the third, verdict for plaintiff, and
from that lies this appeal.

The main, and in fact the only real question in the case is
whether the proof made out the plea of limitation by the
defendants   But the counsel for defendant insists that Riley
was not a mere intruder ; that he took possession in good
faith, under a purchase from Hubert; that according to the
proof, the land was surveyed for Hubert in 1838, at a time
when a parol sale of lands was valid, and that after an undis-
turbed adverse possession of ten years, the Court should pre-
sume that there was a valid contract between the plaintiff and
Hubert in relation to this portion of his headright.

The argument is perhaps sound, but requires no distinct
consideration, as the presumption claimed would arise on ad-
verse possession of ten years without any evidence or color of

title, viz: from considerations of public policy and for the repose and security of titles, a valid conveyance from the true owner of the land would then be presumed. (9 Humph. R. 399.)

From the charge of the Court we may infer that there was, in argument, an attempt to support the defence on two grounds, viz:

1st. That there was a paper title in the defendants.

2d. Adverse possession for ten years.

The bond, or agreement, from Hubert to Riley, when considered alone, unconnected with the possession, is evidently insufficient to sustain the defence; and, considered in that light, the Court properly charged that it was insufficient without some evidence that Hubert had title either from Faris or the Government. And if the agreement, when considered alone, gave Riley no title to the land as against the plaintiff, the sale by the administrator of Riley could convey no title to the defendant; there being none in Riley to be conveyed; and the charge of the Court to that effect was a correct exposition of the law. It perhaps had an effect upon the jury unfavorable to the defendant; for when instructed that the sale by the administrator passed no title to the defendant, it might be difficult for them, unless capable of nice discrimination, to perceive clearly how far the same same sale might pass some title, viz: the right of possession, provided Riley had, according to the charge, been in actual possession at the time of his death: that considered with reference to the paper title, the sale would pass no right, there being none in Riley valid against the plaintiff; but with regard to the possession of Riley, if he had such possession at the time of his death, it would pass his right of possession.

But if confusion or difficulty arose from instructions which apparently ascribed opposite legal effects to the same act, the misfortune must be attributed to the defendant's insisting upon a ground of defence which was not maintainable and which

made it necessary to charge that through such channels he could derive no title which was effectual for his defence.

The main question arises on the plea that the defendant and those through whom he claims, had adverse possession for ten years before the commencement of suit; and the appellant insists that there was error in the charge, in that it assumed the doctrine that an actual, manual, personal, continued possession by the party himself in person, was necessary to quiet his title, and that possession by his tenants, agents, &c., would not be sufficient; and though some portion of the charge might be construed differently by a lawyer, yet the whole charge taken together is calculated to leave no other impression on the minds of the jury.

The charge is to the effect that the defendant must prove all the facts necessary to make his claim by limitation clear and valid; that is, he must prove that he and those through whom he claims, in privity of estate or title, have had the actual, peaceable, adverse possession, continued without interruption, cultivating, using or enjoying the land for ten years before suit; that this actual porsession must be by living on the land or some other open and notorious or known acts of possession, using and cultivating the land and claiming adversely to plaintiff; and that the defendant entered and took possession under another person who had been in like actual adverse possession cultivating and enjoying the land; that such person was in the possession, and that the defendant acquired his right by regular valid title of conveyance, so that the possession of both of these was connected without interruption, and that their joint possession was more than ten years before suit. But if defendant has been out of actual possession at any time since he entered within the ten years, or has lived upon another tract of land, and has not cultivated or used the tract in suit at any time during the ten years, or if the defendant had yossession only as agent for the former possessor, who had left possession of the land and had died out of the possession

before the ten years had expired, and afterwards defendant bought his right or claim from his administrator, this would not connect defendant's possession with the former, and in either of these cases the jury was instructed to find for the plaintiff.

The effect of this charge would be to hold the defandant somewhat strictly to the proof of facts necessary to constitute the adverse possession under which he claimed. But there is no error in the charge, or objection, except in the particulars to which I shall hereafter refer. The Court charges that the possession must be actual, continuous and uninterrupted. This is believed to be sound law. The evidence shows a continuous possession. The law does not require, and especially with reference to the longer term of limitation, with regard to which the construction might be more liberal than with respect to the shorter terms, that the intruder should be constantly in the actual occupancy. If his leaving be such as to evince an intention of abandoning the land, and to allow it to return to its former condition, then the constructive possession will revest in the true owner, and the running of the Statute be interrupted. In Cunningham v. Patton, 6 Barr, 355, it was held that where the tenant left the premises for five months for a special purpose, with an intention of returning, the continuity of his possession was not broken ; and this would be the rule where land is rented, and a short time might elapse after one tenant leaves before another succeeds ; yet this would be no such gap as would break the continuity of possession, especially where the fences are kept up by the owner, or the houses, if there be any, closed, or other. acts indicative of continued claim to the land. But as the evidence did not show any break in the possession, there was no necessity for special instruction on that point. Nor was there any objection for the want of written leases to the tenants, and there was no necessity for the instruction that if they held by parol, this would be sufficient to connect the possessions, at least

under the Section conferring title by the ten years' possession. As to the actual possession, that was explained as either living on the land, or cultivating it or using it, claiming adversely to the plaintiff, and left the defendant no ground of complaint.

The only propositions in the charge, to which there is legal objection, are

First. The instruction to the effect that the defendant must acquire the right of the person who was in possession previous to him, by regular valid title of conveyance, and that the jury must believe this from the evidence. This might leave the jury to imagine that they had a right to determine upon the intrinsic validity of the deed from the administrator of Riley to the defendant. In the first part of the charge, it was stated that the Probate Court had jurisdiction in the matter of Riley's estate; that the proceedings in that Court could not be attacked collaterally, or set aside in this suit; that the sale by the administrator was sufficient to pass to the defendant such estate as Riley had and no more. But this was said in another connection altogether, and with reference to which the Court also said that the sale conferred no title on the defendant. The Court should have referred the jury to this part of the charge, or instructed them again as to the legal effect of the deed from the administrator; that it passed whatever estate Riley had in the land, or that it was valid and regular and was legally sufficient to pass whatever right was in Riley, provided he had any at the time of his death.

Second. The proposition to the effect that if defendant had possession as agent for the former possessor who had left possession of the land and died out of possession before the ten years had expired, and afterwards defendant bought his right or claim from his administrator, this would not connect the two possessions.

The evidence could, it is conceived, lead to no other conclusion than that the land, after Riley left, was rented by the defendant as his agent to others, and when not so rented was

cultivated by the defendant himself, being in possession as agent and with the permission of Riley, and that his possession and cultivation was continuous from the time that Riley left until his death ; and the jury must or might very reasonably have concluded from the charge, that Riley should have died on the land, and without he did die upon the land and in actual possession, a sale by his administrator could confer no right. It is barely possible that the Court intended to assert, that if at the time of Riley's death the defendant held possession merely as agent, not cultivating or using the land either by himself or others, that then there was an abandonment, and the right of the true owner had reverted ; Riley had none at the time of his death, and his administrator could confer none. But it is very improbable that he could have been so understood by the jury ; and that in the sense in which he was understood, the instruction was not in conformity with law. The possession of the tenants and agent of Riley was the possession of Riley. The land must be used and cultivated, but whether this be done by Riley or his tenants or agent, those holding under him, was immaterial. His possession, whether held by himself or others under him, gave him a right which he could convey or which would pass by descent to his heirs, or which might be disposed of by his administrator.

In this respect we deem the charge of the Court to be erroneous, and the judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.