H. H. HUTTO ET AL V. HOLMAN COOK ET AL.

No. 7895. Decided July 15, 1942.
Rehearing overruled October 7, 1942.
(164 S. W., 2d Series, 513.)

572

*W. B. Moss,* of Sinto, and *Kelso, Locke & King, of* San Antonio, for plaintiffs in error.

It was error for the Court of Civil Appeals in holding that the evidence of a certain witness, who was a party defendant

in the trial court, relating to a conversation with the deceased ancestor of plaintiffs, was admissible and in holding that Article 3716 of the R. S. was not applicable thereto, because such evidence was clearly in contravention of said article and was properly excluded. Evans v. Berlocher, 83 Texas 612, 19 S. W. 158; Kennon v. Miller, 143 S. W. 986; Olive v. Bevil, 55 Texas 423.

*Seale & Wood*, of Corpus Christi, *Joe Ternus*, of Sinto, and *M. A. Childers*, of San Antonio, for defendants in error.

MR. JUSTICE SHARP delivered the opinion of the Court.

This is an action in trespass to try title, brought by H. H. Hutto et al to recover certain lots in Block 5 of the H. & H. Oil & Development Subdivision in San Patricio County. In addition to the usual statutory allegations, plaintiffs plead title under the three, five, and ten year statutes of limitation. Trial was to a jury, which found, in answer to the only special issue submitted, that plaintiffs and those under whom they claimed, either in person or through tenants, had held peaceable and adverse possession of the lots in question for ten years prior to the institution of this suit. Judgment was thereupon entered for plaintiffs. The Court of Civil Appeals reversed the judgment and remanded the cause. 151 S. W. (2d) 642. This Court granted a writ of error.

The question for determination in this case is whether certain testimony of John Gollihar, a party defendant, concerning statements made to him by S. Newman, deceased, the father of some of the plaintiffs, relating to Newman's possession and occupancy of the land in controversy, was admissible under Article 3716, R. C. S. 1925; such testimony having been rejected by the trial court.

In 1921 C. V. Jones purchased land adjoining the lots in controversy. When he fenced his property he also enclosed said lots within his fence. In 1923 Jones deeded his property to said S. Newman. The description in the deed did not include the lots in controversy. However, in 1923, S. Newman, with his wife and some of his children, went into possession of all the land within the Jones fence. He built a house on the property to which he had a deed, and put a large part of the land, including part of the lots in controversy, into cultivation. He

remained on the land until his death in 1925. He died intestate, and no administration was had on his estate. He was survived by his wife, eleven children, and one grandson by a predeceased daughter. There is no testimony as to the age of any of the children or of the grandson. When S. Newman died, his wife, a daughter, and the grandson were residing on the property with him; but soon thereafter a son, George Newman, moved on the property to help take care of it. They remained on the property until 1927. Early in that year the mother "broke up housekeeping" and moved off. Later in that year the son also moved off; and the property was rented to tenants from 1928 to 1936. The renting of the property, including the lots in controversy, was under the supervision of another son, N. R. Newman. He repeatedly testified that he was managing the property for "the family" or "the estate." At one point he testified that he handled the property for the mother until her death. She died intestate in 1937, and no administration was had on her estate. A tenant occupied the property part of 1937; and in that same year another son, Tom Newman, moved on the land, and remained there until the filing of this suit in September, 1939. He testified that he was on the land "as a tenant of the estate." N. R. Newman, who occupied the land in 1936, and who rented the property, testified that he was claiming all the land for himself and the other eleven heirs; that is, the other ten children and the grandchild. In 1938, after the death of the mother, and after having secured a power of attorney from the other "heirs," he executed an oil and gas lease on the property. This lease later terminated because of the failure by the lessee to pay delay rentals. Delinquent taxes were paid on the land "by the estate"; presumably the estate of the father. The plaintiffs in this suit are the descendants of S. Newman and wife, predominantly the children, or assignees of such defendants.

■ Upon trial of the case, one of the defendants, John Gollihar, called to the stand by the defendants, was asked if he had had a conversation with S. Newman with reference to the lots in controversy. Upon objection by plaintiffs' counsel, the witness was not permitted to answer the question. In the preparation of the bill of exception, out of the hearing of the jury, Gollihar testified that in 1924 he went to S. Newman's place to see him. Newman, according to Gollihar, admitted that he did not own the lots in controversy, but said that he would like to be permitted to use them. In return, S. Newman agreed to pay the taxes on the lots in controversy which were included

within the Jones fence. Gollihar then testified that he, acting for himself and Messrs. Cook, Dupree, Skeen, and Daffern, other lot owners whose interests were represented by defendants in the case, orally agreed to the proposition proposed by S. Newman. The testimony was certainly a declaration against interest, and would tend to prove that S. Newman was not claiming the land adversely to the true owners. It was therefore highly relevant testimony, and admissible, unless the witness was incompetent to testify as to such transaction under Article 3716, R. C. S. 1925. That Article provides:

"In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representations of a decedent arising out of any transaction with such decedent."

It is the contention of the petitioners that they are heirs of S. Newman, and that, therefore, the testimony of the opposite party as to statements by S. Newman is inadmissible. It is therefore necessary to determinate whether they are, in fact, heirs within the meaning of the foregoing statute.

Article 5516, R. C. S. 1925, provides that: "Peaceable and adverse possession need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them." Privity of estate, as said in Vol. 2, p. 169, sec. 89, of Texas Jurisprudence, is shown under the following circumstances: "Privity of possession between successive occupants or possessors of the land is shown to have existed, * * * by proof that the earlier occupant's possession and claim passed or was transferred to the later occupant by agreement, gift, devise or inheritance." Also see McAnally v. Texas Company, 124 Texas 196, 76 S. W. (2d) 997. Where it is shown that the earlier occupant died and the later occupant went into possession as an heir, privity between them is established, and their periods of possession may be tacked. Olive v. Bevil, 55 Texas 423; 2 Tex. Jur., p. 170, sec 89; 2 C. J. S., p. 623, sec. 79b; 1 Amer. Jur., p. 880, sec. 153; Tiffany's The Law of Real Property (3d ed., 1939), Vol. 2, p. 435, sec. 1146.

Article 4619, Vernon's Annotated Civil Statutes, in part reads as follows: "Sec. 1. All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; * * *." Many decisions in construing such Article announce the rule that where a husband and a wife claim and occupy land with the intention of perfecting title by limitation, and one of the spouses dies before limitation is complete, such land becomes the property of the survivor who matures the period of limitation. In other words, if one of the spouses dies before the title by limitation matures, the property becomes the separate property of the surviving spouse who completes the title by limitation, and not the property of the community estate. Bishop v. Lusk, 8 Texas Civ. App. 30, 27 S. W. 306; Cook v. Houston Oil Co. of Texas (Civ. App.), 154 S. W. 279; Jobe v. Patton (Civ. App.), 222 S. W. 987; Sauvage v. Wauhop (Civ. App.), 143 S. W. 259; Wichita Valley Ry. Co. v. Somerville (Civ. App.), 179 S. W. 671; Gafford v. Foster, 36 Texas Civ. App. 56, 81 S. W. 63; 2 Tex. Jur., p. 170, sec. 89; 23 Tex. Jur., p. 137, sec. 109; Speer's Law of Marital Rights in Texas, p. 457, sec. 374; 11 Am. Jur., p. 188, sec. 21.

■ The rule announced in the foregoing decisions is not applicable here. In this case the husband and the wife went into possession of the land in 1923. The husband died in 1925. The surviving wife and some of the children continued to occupy the property until 1927, when they moved off the land. Mrs. Newman died in 1937; but, as stated, she moved off the land in 1927. N. R. Newman, one of the children, testified that his brother George came back and occupied the land in 1927, when his mother left. He further testified that the estate paid taxes on this land; that the estate took charge of it after the death of his father; and that it was held for the heirs. It therefore appears, according to the testimony introduced, that the adverse possession for ten years, as required by the ten-year statute of limitation, was not completed during the time the land was occupied exclusively by S. Newman and wife. It clearly appears from the record that the husband occupied it for two years; that his surviving wife then occupied it for two more years; and that the remainder of the time to complete the ten years of adverse possession it was occupied by some of the children and heirs of S. Newman and wife, and by tenants;

and that such occupancy was for the benefit of the estate and the heirs.

Under the facts of this case, we do not think that this property became the separate property of Mrs. Newman. We think this record discloses that the plaintiffs, as the basis of their suit to establish their claim by limitation, considered that the occupancy of said property by the husband and the wife, together with the occupancy of same by the children and the tenants, taken as a whole, perfected the title by limitation; and that such occupancy was for the benefit of the heirs of S. Newman and his wife. The issue submitted to the jury and their answer thereto, and the judgment entered in this case, we think sustain this conclusion. This being true, a privity of possession existed between the father and the mother and their children; and the interest of the father became part of his estate, and his heirs inherited such interest. Cochrane v. Faris, 18 Texas 850, 857; Olive v. Bevil, 55 Texas 423; Evans v. Berlocher, 83 Texas 612, 19 S. W. 158; 2 Tex. Jur., p. 169, sec. 89; Amer. Jur., Vol. 1, p. 880, sec. 153.

■ The policy of this Court is to strictly construe the language contained in Article 3716, and it is not inclined to extend this construction beyond the plain meaning contained therein. International Traveler's Assn. v. Bettis, 120 Texas 67, 35 S. W. (2d) 1040; Martin v. McAdams, 87 Texas 225, 27 S. W. 255; Newton v. Newton, 77 Texas 508, 14 S. W. 157; Mitchell v. Deane (Com. App.), 10 S. W. (2d) 717; Lassiter v. Bouche (Com. App.), 14 S. W. (2d) 808; King v. Heirs of G. H. King (Com. App.), 34 S. W. (2d) 804. We think, however, that this Article applies to this case. This is a suit by the heirs of S. Newman, deceased, for the title to the land involved herein. The plaintiffs claim the title by limitation, by reason of the occupancy of said land by S. Newman, his wife, their children, and tenants,—who continued such occupancy for a period of ten years. The defendants undertook to defeat plaintiffs' claim of limitation by offering to prove that S. Newman during his lifetime made statements of John Gollihar, a party defendant to this suit, that he was not occupying such land adversely to the owners thereof.

Under the record in this case, the testimony of John Gollihar, relating to his conversation and transactions with S. Newman, was not admissible under Article 3716. The trial court

578

correctly excluded such testimony, and the Court of Civil Appeals erred in reversing and remanding the case.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

Opinion delivered July 15, 1942.

Rehearing October 7, 1942.