## JAKOVICH v. NASS.

### No. 11678.

Court of Civil Appeals of Texas. Galveston.
Jan. 18, 1945.

Rehearing Denied Feb. 15, 1945.

W. E. Greer, of Galveston, for appellant.

Lockhart, Hughes & Lockhart, of Galveston, for appellee.

MONTEITH, Chief Justice.

This suit was brought by appellant, K. D. Jakovich, in statutory form of trespass to try title for the recovery from appellee, Frank J. Nass, of the title and possession of 3.88 acres of land, alleged by appellant to be a part of Lot 483, Section 1, of the Trimble and Lindsey Survey on Galveston Island, in Galveston County, Texas. Appellee answered by plea of not guilty and by special pleas of the five and ten years statutes of limitations, Articles 5509 and 5510, Revised Statutes of 1925.

One special issue was submitted to the jury, that of adverse possession by appellee of the land in controversy under the ten-year statute of limitation. In response to said special issue the jury found that appellee and those under whom he claimed title had not had peaceable, adverse and continuous possession of the land in controversy for any continuous period of ten consecutive years prior to the filing of this suit on April 8, 1943. After the return of the jury's verdict appellee moved for a judgment non obstante veredicto for the alleged reason that he had established a perfect title in himself under the ten-year statute of limitations by undisputed testimony. After due notice and hearing on appellee's said motion, the trial court rendered judgment non obstante veredicto in favor of appellee and against appellant for the title and possession of the 3.88 acres of land in controversy.

It was stipulated by the parties that appellant held the record title to said Lot 483 and that appellee held the record title to Lot 500, which lies directly west of and adjoins said Lot 483. While there was no stipulation made with reference to the location of the boundary line between the two lots, it is undisputed in the record and admitted by appellee in his brief that the 3.88 acres in controversy are out of the western part of said Lot 483.

█ It is the settled law in this state that, in determining in any case whether or not error has been committed by a trial court in rendering judgment non obstante veredicto, the testimony adduced on the trial must be considered in the light most favorable to the losing party and that conflicts in the testimony must be disregarded and every intendment reasonably deducible from the evidence must be indulged in favor of such party and against the judgment non obstante veredicto. Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224; Happ v. Happ, Tex.Civ.App., 160 S.W.2d 227, writ of error refused; Anglin v. Cisco Mortgage Loan Co., 135 Tex. 188, 141 S.W.2d 935; 3 Tex.Jur., pp. 1049, 1051.

█ In the instant case if there was evidence in the record of probative force to support the finding of the jury, this finding was conclusive and binding on the trial court, and this court is bound thereby.

By instrument dated November 25, 1932, appellee entered into a contract to purchase Lots 500 and 501, Section 1, and Lot 20, Section 2, of the said Trimble and Lindsey Survey, from Walter L. Johnson, administrator of the estate of Ira M. Smalley, deceased, for a consideration of $1040. Under the terms of said contract, Walter L. Johnson, as administrator, agreed to deliver a deed to said property to appellee at such time as said contract was approved by the probate court of Galveston County. Mr. Johnson testified that this contract was never consummated for the reason that it was disclosed by a subsequent survey that there was a shortage in the acreage of the property contracted to be purchased and that appellee had refused to carry out the terms of the contract as executed and that said contract was never approved by the probate court of Galveston County. He testified that he had later secured an order from the probate court to sell the property to appellee on different terms from those contained in the contract of November 25, 1932, and that by deed dated February 14, 1936, he, as administrator of the Smalley estate, had conveyed Lots 500 and 501, Section 1, and Lot 20, Section 2, of the said Trimble and Lindsey Survey, to appellee for a consideration of "$800.00 or eight hundred odd dollars". Mr. Johnson testified that after the execution of said contract of sale of November 25, 1932, he had permitted appellee to go on said land as his agent and to pasture his cattle thereon, in order to prevent vandals and thieves from carrying off the farm equipment, and that appellee had run some cattle on the land for awhile but that later he (appellee) had taken them out and put them in a pasture on the north side and that he had not continually run cattle on the land. Mr. Johnson testified that, as administrator of the Smalley estate, he had retained and exercised complete control over the property owned by the Smalley estate up to the time he sold it to appellee on February 14, 1936, and that he had at no time as such administrator claimed title to or possession of any property for the Smalley estate except the property included in the deed to appellee, Lots 500 and 501, Section 1, and Lot 20 of Section 2, of said Trimble and Lindsey Survey.

The record shows that, when appellee acquired title to Lot 500 of the Trimble and Lindsey Survey, which adjoins the land in controversy on the west, the fence around said Lot 500 included also the 3.88 acres of land in controversy and that said fence had been so located for a number of years.

Henry R. Decie lived on said Lot 500 until about 1900. By deed dated December 26,

1916, he conveyed said lot to R. Pappisch. By deed dated February 10, 1930, R. Pappisch conveyed said lot to Ira M. Smalley. While the evidence is undisputed that the fence lines remained unchanged, there is no testimony in the record that the owners of said Lot 500 claimed the adjoining 3.88 acres out of said Lot 483 included within the enclosure with said Lot 500, or that they attempted to transfer or convey any part of said Lot 483 either by the deeds out of them or by parol delivery of possession thereof.

Article 5516, Revised Statutes of 1925, provides that: "Peaceable and adverse possession need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them."

In Vol. 2, Tex.Jur., page 169, Section 89, it is said that, "Privity of possession between successive occupants or possessors of the land is shown to have existed * * * by proof that the earlier occupant's possession and claim passed or was transferred to the later occupant by agreement, gift, devise or inheritance. The fact of privity is not established where it simply appears that the land was occupied by different persons successively, there being nothing to show that the claim of the earlier was transferred to the latter occupant by contract or otherwise." 2 Corpus Juris, page 91, § 96, gives this general rule for determining the privity of estates by the process of tacking: "The general rule is that possession cannot be tacked to make out title by prescription where the deed under which the last occupant claims title does not include the land in dispute. It must clearly appear that the particular premises were embraced in the particular deed or transfer in whatever form it may have been made." See, also, 2 C.J.S., Adverse Possession, § 131. Hutto et al. v. Cook et al., 139 Tex. 571, 164 S.W.2d 513; McAnally v. Texas Company, 124 Tex. 196, 76 S.W.2d 997, 1001.

As an exception to this general rule it is held, however, that: "The mere fact that the land in dispute is not included in the deed will not of itself operate to deprive the grantee's possession of the land of the attribute of privity. Even though the deed may have contained a defective description as to require correction, yet sufficient privity exists between the successive occupants where there was a parol delivery of possession * * *. But an actual transfer of possession is of course necessary where the land is not included in the deed." McAnally v. Texas Company, supra.

Appellee contends that, under the rule announced in the case of Neyland v. Ward, 22 Tex.Civ.App. 369, 54 S.W. 604, he became vested with the rights and interests of his predecessors in title, Ira M. Smalley and the administrator of the Smalley estate, in the 3.88 acres of land in controversy, which is admitted to be a part of said Lot 483, under his contract to purchase said Lot 500, and other property out of the Trimble and Lindsey Survey, and that these rights and interests, including the acts of use, occupation and ownership, of his predecessors in ownership in said 3.88 acres of land inured to his benefit and their interests in said land became fully vested in him when he completed the purchase of the property involved in said contract of sale and that he thereby became vested with title to said land under the ten-year statute of limitations. This contention cannot, we think, be sustained under the facts in this case.

As we interpret the opinion in the case of Neyland v. Ward, supra, upon which appellee relies, the court held that a bond for title, acknowledging receipt of purchase money, conveys to the grantee therein an equitable interest in the land *contracted to be purchased* (emphasis ours) upon which the purchaser may maintain an action in trespass to try title.

In the instant case, neither the contract of sale under which appellee claims a right and interest in the land in controversy, nor the deed under which he acquired title to said adjoining Lot 500 and other property, purports to convey an interest in said Lot 483 of which the 3.88 acres of land in controversy is admitted to be a part, and Walter L. Johnson, the administrator of the Smalley estate, testified that he did not claim, as such administrator, or convey to appellee, any right or interest in any property other than that described in said contract and deed.

It is undisputed that appellee acquired title to said Lot 500, which was under fence with the land in controversy, on February 14, 1936, and that this suit was filed on May 8, 1943, a period of less than eight years. Walter L. Johnson, the administrator of the Smalley estate, testified that after appellee entered into a contract to purchase said Lot 500, which contract did not purport to involve said Lot 483 of which the land in controversy is a part, on November 25, 1932, he had permitted appellee as his agent

to run some cattle on said Lot 500 but that appellee had taken them out and put them in another pasture and had not continually run cattle on the land.

We think that the jury was authorized to consider this testimony with the other testimony already mentioned in connection with the issue as to whether appellee had been in adverse and continuous possession of the land in controversy, using it as a pasture for grazing purposes for any continuous period of ten consecutive years and that there was in the record sufficient evidence of probative force to support the jury's verdict.

Applying that portion of Rule 324, Texas Rules of Civil Procedure, which provides that where on appeal the appellate court determines that judgment non obstante veredicto was erroneously entered such court will reverse the judgment of the trial court and enter judgment in harmony with the verdict (Le Master v. Fort Worth Transit Company et al., 138 Tex. 512, 160 S.W.2d 224), the judgment of the trial court in favor of appellee is reversed and judgment is here rendered in favor of appellant for the title and possession of the land in controversy.

Reversed and rendered.