Eugene BRAGG, Jr. et al., Appellants,

v.

Harry H. WITTNEBEN, Appellee.

No. 17800.

Court of Civil Appeals of Texas, Houston (1st. Dist.).

July 2, 1981.

Rehearing Denied July 30, 1981.

Michael Anthony Maness, Houston, for appellants.

De Lange, Hudspeth, Pitman & Katz, Eugene J. Pitman, Houston, for appellee.

Before COLEMAN, C. J., and SMITH and PEDEN, JJ.

PEDEN, Justice.

Eleven of the twelve children and heirs of Eugene Bragg, Sr., appeal from a judgment in favor of Harry H. Wittneben rendered *non obstante veredicto* in the Braggs' suit in trespass to try title to approximately 33 acres of land in Waller County. The appellants contend that the trial court erred in granting the defendant's motion for judgment *n. o. v.* and in refusing to enter judgment on the verdict that the plaintiffs recover the property. They say the evidence is sufficient to support the jury's finding that the plaintiffs had sustained their claim of limitation title under the ten year statute, Article 5510, V.T.C.S.

The appellee contends by cross-point of error that the trial court erred in permitting each of the appellants to testify to transactions with Eugene Bragg, Sr., deceased, over the objection that such testimony violated the prohibition of the Texas Dead Man Statute, Article 3716, V.T.C.S. The appellee's counterpoints are that the trial court correctly rendered judgment *n. o. v.* that the appellants take nothing because 1) the evidence conclusively showed that the appellants and their predecessors in title had shared possession with the owner of the record title since January 1, 1944, 2) there was no evidence of peaceable and adverse possession continuously for any ten consecutive years, and 3) there was no evidence of any cultivation or other possession than alleged grazing use, for any period of ten consecutive years, and the evidence shows that there was no designed enclosure of the tract in question by the appellants or their predecessors.

The plaintiffs' original petition alleged that they were owners in fee simple of a certain 102.95 acre tract in the John Irons Survey, A–39, of Waller County, that they were in possession of such tract from January 1, 1944, until May 29, 1975, when the defendant unlawfully entered the property and dispossessed them of a portion of it by destroying and threatening to destroy a common fence erected by the plaintiffs on the tract, that the plaintiffs and their predecessors in title had held peaceable,

continuous, open, and exclusive adverse possession under the three, five, ten, and 25 year statutes, and that the defendant had deprived them of the use of the land and clouded their title to it, causing them to suffer damages of $5000.

The defendant answered with a general denial and plea of not guilty; he specially pleaded that he had limitation title under the three, five, and ten year statutes and that any claim for damages was barred by the two year statute of limitations.

At trial the parties stipulated that only 33 acres of the tract described in the plaintiffs' petition are in dispute, such part being the parallelogram-shaped portion of plaintiffs' exhibit No. 1 which is bounded by corners "A", "B", "C", and "G".

Article 5510, V.T.C.S., provides:

Any person who has the right of action for the recovery of lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward. . . .

Article 5515 defines "adverse possession" as an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

In response to three special issues the jury found 1) that plaintiffs and those under whom they claim were in peaceable and adverse possession of the 33 acres, cultivating, using or enjoying the same, for a period of 10 consecutive years before commencement of suit; the jury did not find from a preponderance of the evidence 2) that the defendant, Harry H. Wittneben, Trustee, and those under whom he claims, held peaceable and adverse possession of the 33 acres under title or color of title, for any period of 3 consecutive years before commencement of suit and did not find 3) that defendant Wittneben and his predecessors in title had held adverse possession of the property in question under the five year statute.

We are here concerned only with the jury's answer to the first issue.

The trial court's definitions and instructions included these:

"Peaceable possession" is such as is continuous and not interrupted by adverse suit to recover the estate.

"Adverse possession" is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.

You are instructed that the *possession of the Plaintiff, Eugene Bragg, Jr. could not be adverse before October 2, 1964, or thereafter until notice of the adverse character of such possession was given to the Defendant,* Harry H. Wittneben, Trustee, or those under whom he claims. (emphasis added)

You are further instructed that the *possession of all the Plaintiffs could not be adverse* as that term is used in this charge, *for so long as* such possession was *shared with E. L. Bragg,[1] or thereafter until notice of the adverse character* of such possession *was given to the Defendant,* Harry H. Wittneben, Trustee, or those under whom he claims. (emphasis added)

By "notice" is not necessarily meant actual notice of such adverse possession and claim, but such notice may be presumed to have been brought home to the said Defendant, or those under whom he claims, if the jury finds from a preponderance of the evidence that the adverse occupancy, if any, and claim of title, if any, on the part of the said Plaintiff, and those under whom he claims was open, notorious, exclusive and unequivocal for such a length of time as to be inconsistent with the existence of title in the said Defendant, and those under whom he claims title, and of such notoriety as to constitute notice to said Defendant, and those under whom the Defendant claims title, of the adverse possession, if any, and claim of title, if any, of the said

Plaintiff, Eugene Bragg, Jr., and those under whom said Plaintiff claims title.

. . . .

"The 33 acres" as that term is used in this charge means the tract delineated on Plaintiff's Exhibit No. 1 between lines A–B, B–C, C–G, and A–G.

The appellants moved for judgment on the verdict, but the trial court granted the appellee's motion for judgment *non obstante veredicto.*

In that motion the appellee contended that the 33 acre tract in controversy was part of 47 acres Elembric Bragg purchased in 1944, that since such time Elembric had used the property in common with the appellants and their father, none of whom claimed adversely to Elembric, and that there was no evidence 1) that Eugene Bragg, Sr., i) ever had asserted any claim to the property described in the first special issue, ii) ever had exclusive possession of the property which is the subject of special issue 1, or iii) ever made use of the property for any period of 10 consecutive years, 2) no evidence that fences enclosed the subject tract, 3) no evidence which might identify the persons who constructed fences encompassing the 33 acres, together with other land, or indicate the purpose for which the fences were constructed. Moreover, the appellee says that there is no evidence that Eugene Bragg, Sr., ever notified anyone or otherwise brought home notice indicating either that the character of permissive possession had been changed or that a claim of adverse character had commenced. The motion for judgment n. o. v. asserted other bases which we need not notice.

■ We look first to the appellee's cross-point, that the trial court erred in permitting the appellants to testify to transactions with their deceased father, under whom they claimed.

Mr. Eugene Bragg, Sr., died intestate in 1961. He was the father of the eleven plaintiffs and of Elembric Bragg; six of the plaintiffs testified about their observations

---

1. E. L. Bragg is also known as Elembric Bragg. He is a brother of the eleven plaintiffs, and he is a predecessor in title of the defendant-appellee, Harry H. Wittneben.

of their father's use of the 33-acre tract. It was over the appellee's objection based on the Dead Man's Statute that the plaintiffs were permitted to testify about their observations of the father's building certain fences and about his use of the tract by cutting wood, grazing cattle, planting grass, raising gardens, and planting certain crops.

The Dead Man's Statute, Article 3716, V.T.C.S., provides:

> In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the ... intestate ... unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent.

All six of the plaintiffs-appellants who testified as to their father's activities on the tract in question claimed under him as his heirs and relied upon his adverse possession for their claim of title under the ten year statute of limitation.

In support of their position that the testimony in question was admissible, the appellants rely upon *Harper v. Johnson*, 162 Tex. 117, 345 S.W.2d 277 (1961), in which the Supreme Court reiterated its policy to strictly construe the language of Article 3716. In that case the court stated: "... we are unable to say that the statute was ever intended to include the circumstances surrounding an involuntary and fortuitous collision between two motor vehicles driven by two complete strangers."

The Texas Supreme Court commented on *Harper v. Johnson* in *Grant v. Griffin*, 390 S.W.2d 746 (1965), acknowledging that the disqualification of witnesses imposed by the Dead Man's Statute has been roundly criticized in many quarters:

> These criticisms may well be justified; and no doubt the injustice which the statute has wrought has prompted our adoption of a liberal policy of admitting

testimony whenever a reasonable construction or application of the statute will permit. See *Harper v. Johnson*, 162 Tex. 117, 345 S.W.2d 277 (1961); *Ragsdale v. Ragsdale*, 142 Tex. 476, 179 S.W.2d 291 (1944). But to interpret the statute liberally is far different from nullifying or repealing it. The statute is not court-made law. It was enacted by the Legislature acting well within the boundaries of legislative power, and challenges to the wisdom of legislative action must be addressed to the Legislature and not to the courts.

Commenting further on *Harper v. Johnson*, the court stated:

> In the course of our opinion we referred to a dictionary definition of the word "transaction," but the definition did not control our decision. On the contrary, our decision was ruled by our conclusion that the "impersonal, fortuitous and involuntary relationship" between the parties should not be construed as a "transaction" within the meaning of the statute.

The appellee points out that our Supreme Court has held that Article 3716 applies in a case of the type here involved. *Hutto v. Cook*, 139 Tex. 571, 164 S.W.2d 513 (1942), was a suit by the heirs of a decedent based on a claim to title by limitation. The Supreme Court held that the trial court had correctly excluded a defendant's testimony that the decedent had said he was not occupying the land adversely to its owners.

The appellee also cites *Hart v. Rogers*, 527 S.W.2d 230 (Tex.Civ.App.1975, writ ref'd n. r. e.) a suit in which a primary question concerned an alleged delivery of two deeds. Chief Justice Austin McCloud wrote for the Eastland Court:

> The trial court excluded the testimony of Thelma Hart, mother of Don Leander Hart, that she was present and saw Bessie Holt manually hand the Scott Place deed to Don Leander Hart. Defendants argue that the court erred because the evidence did not concern a transaction with Don Leander Hart. We disagree. Article 3716, Tex.Rev.Civ. Statutes, pro-

hibits an incompetent witness from testifying not only as to statements made by the decedent to the witness, but also as to conversations and transactions which occurred between the deceased and a third party.

The court in *Furr v. Furr*, 440 S.W.2d 367 (Tex.Civ.App.-Fort Worth 1969, writ ref. n. r. e.), stated:

"We hold that the evidence was properly excluded. In *International Travelers' Ass'n v. Bettis*, 120 Tex. 67, 35 S.W.2d 1,40 (1931) the authoritative cases up to time of the opinion were cited, all indicated as honoring the decision of *Parks v. Caudle*, 58 Tex. 216 (1882), language from which was quoted, as follows: 'In our opinion, a party is prohibited from testifying, not merely as to statements by the deceased to him, or transactions between him and the deceased but also as to such statements to or transactions between deceased and third persons, and that too, although occurring when the witness had no interest therein. The statute had in view, primarily, a transaction between parties, one of whom had since died, and whose heirs or representatives were engaged in a suit with the survivor. As to such a transaction neither party was allowed to testify.

.    .    .    .    .

See also *Byers v. Parker*, 16 S.W.2d 1110 (Tex.Civ.App.-Amarillo 1929, writ ref'd).

It is also well settled that the term transaction includes a unilateral event where the decedent is the sole participant and the witness merely observes the conduct of or what occurred to the deceased. *International Travelers' Ass'n v. Bettis*, 120 Tex. 67, 35 S.W.2d 1040 (1931).

We hold that the trial court should have excluded the testimony in question.

■ Without that testimony, there is no evidence—based on the actions of Eugene Bragg, Sr.—to support the first jury finding: that the plaintiffs sustained their claim to limitations title under the ten year statute. The only question remaining is whether there was any evidence—based on the plaintiffs' own actions after their father's death in 1961—to support that first jury finding.

■ It is uncontroverted that after the death of Eugene Bragg, Sr., in 1961, the plaintiffs' possession of the tract in question was shared with their brother, Elembric Bragg, and was not hostile to his claim. It was also shown that on October 2, 1964, Elembric Bragg received a correction deed from his brother, Eugene Bragg, Jr., and that thereafter Elembric was the record owner of a 47-acre tract that included the 33-acre tract.

We hold that the plaintiffs did not, after October 2, 1964, have such exclusive possession as the law requires to perfect limitation title against Elembric. *In Rick v. Grubbs*, 147 Tex. 267, 214 S.W.2d 925 (1948), our Supreme Court quoted with approval from 2 C.J.S. Adverse Possession 566, § 48:

To be effective as a means of acquiring title, the possession of an adverse claimant must be exclusive of the true owner. The owner must be wholly excluded from possession by claimant. Any sort of joint or common possession by claimant and the owner or a tenant of the owner prevents the possession of claimant from having the requisite quality of exclusiveness. In these circumstances, the law refers the possession to the person having the legal title...

Even if Elembric had not shown that he had the record title after 1964, the possession of the tract by his brothers and sisters, being shared with him and not being hostile to his claim, was not such exclusive possession as would support a judgment for the plaintiffs in a trespass to try title suit against Elembric under the ten year statute of limitations.

■ We also hold, with regard to the trial court's instructions as to "possession" (set out above), that there is no evidence that ten years' notice was given to the defendant, or to those under whom he claims, that any of the plaintiffs' possession was adverse in character. The defendant's predecessor in title was Elembric Bragg

until less than ten years before this suit was filed, and it is clear from the testimony of the plaintiffs, Elembric's brother and sisters, that after their father's death they considered that Elembric was just as entitled to use the 33 acres as they were.

Affirmed.