

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-14-00013-CV

---

JANICE DUDLEY, ET AL., Appellants

V.

NETTIE JOHNSON AND JOSEPH CONWRIGHT, Appellees

---

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 10-0410

---

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

In this Harrison County land title dispute between two neighboring families connected by a marriage, the original title to the disputed 7.23 acres was within the Conwright family, yet there was some evidence that the tract had been used from time to time by various members of the Johnson family other than the Johnson family claimants. After a bench trial, the trial court ruled that, because the Johnson family claimants had not established that they were entitled to limitations title, the Conwright family claimants were owners of the 7.23 acres. Finding sufficient evidence to support the trial court's judgment, we affirm the judgment.

The Johnson family included the parents, Cecil Johnson and wife, Cassie Johnson, and their children, Janice Dudley, Ronnie Johnson, and Dennis Johnson. Janice and Cassie are the Johnson family claimants, though Janice states that she seeks only to enforce Cassie's rights in the 7.23 acres. The Conwright family claimants are Nettie Johnson and Joseph Conwright, the two children of Mattie Helton Conwright, who was the record title holder to the disputed tract when she died intestate in 1983, survived only by Nettie and Joseph. Nettie is a Conwright by birth and a Johnson by marriage. In the remainder of this opinion, we will use first names in referring to the various players in an attempt at clarity.

Janice and Cassie sought to quiet title in the disputed tract by limitations, but the trial court entered a take-nothing judgment and vested title in Nettie and Joseph. On appeal, Janice

and Cassie argue that the evidence is factually insufficient to support the trial court's finding that they did not adversely possess the disputed property.[1]

A plaintiff's right to recover in a trespass-to-try-title case depends on the strength of his or her own title. *Glenn v. Lucas*, 376 S.W.3d 268, 273 (Tex. App.—Texarkana 2012, no pet.); *Ramsey v. Grizzle*, 313 S.W.3d 498, 505 (Tex. App.—Texarkana 2010, no pet.). A plaintiff may recover by proving title by limitations. *Glenn*, 376 S.W.3d 268, 273–74. Where the parties agree as to a common source, "it is incumbent upon the plaintiff to discharge the burden of proof resting on him to establish superior title." *Id.* at 274 (quoting *Davis v. Gale*, 330 S.W.2d 610, 612 (Tex. 1960)). "Upon the failure of a plaintiff to establish superior title in a trespass to try title suit, the proper course of action is for the trial court to enter a 'take-nothing' judgment." *Id.* (citing *Hunt v. Heaton*, 643 S.W.2d 677, 679 (Tex. 1982)). "A defendant is not required to show title in himself or herself, nor may the plaintiff rely on the defendant's failure to do so." *Ramsey*, 313 S.W.3d at 505. "A take nothing judgment in a trespass to try title suit operates to divest the

---

[1]Before Cassie was included as a plaintiff in this lawsuit, Janice filed a motion for summary judgment in December 2010, asking the trial court to declare her the owner of the disputed property as a matter of law because (1) her family had erected and maintained a fence around the property for twelve years and (2) her family grazed cattle on the property and had used the property exclusively for fifteen years. In response, Nettie and Joseph filed a no-evidence summary judgment motion attaching portions of Janice's deposition, which established that Janice never lived on the disputed tract and based her claims of ownership on actions of family members not included in the suit. The trial court denied both motions for summary judgment February 7, 2011. Over two years later, a trial on the merits was held.

On appeal, Janice also argues that the trial court erred in denying her motion for summary judgment. "[I]t is settled in both state and federal court that the denial of a motion for summary judgment may not be challenged on appeal from final judgment following trial." *Hernandez v. Ebrom*, 289 S.W.3d 316, 326 (Tex. 2009) (citing *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 364–65 (Tex. 1966); *Johnson v. Sawyer*, 120 F.3d 1307, 1316 (5th Cir. 1997) ("We have held repeatedly that orders denying summary judgment are not reviewable on appeal where final judgment adverse to the movant is rendered on the basis of a subsequent full trial on the merits.")). Here, because the trial court denied Janice's motion for summary judgment and tried the case on the merits, the order denying the summary judgment cannot be reviewed on appeal. *See Moore v. Jet Stream Invs., Ltd.*, 261 S.W.3d 412, 427 (Tex. App.—Texarkana 2008, pet. denied).

plaintiff of all its title to its interest in the lands in controversy and to vest the same in the defendant." *Glenn*, 376 S.W.3d at 274 (citing *Halbert v. Green*, 293 S.W.2d 848 (Tex. 1956)).

Adverse possession is the "actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(a) (West 2002). In this case, the appropriate statutory period is ten years. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.026(a) (West 2002). To prove adverse possession under the ten-year statute, a claimant must establish six elements: (1) actual possession of the disputed property (2) that is open and notorious, (3) that is peaceable, (4) under a claim of right, (5) that is adverse or hostile to the claim of the owner, and (6) consistent and continuous for the duration of the statutory period. *Kinder Morgan N. Tex. Pipeline v. Justiss*, 202 S.W.3d 427, 438 (Tex. App.—Texarkana 2006, no pet.); *Glover v. Union Pac. R.R.*, 187 S.W.3d 201, 213 (Tex. App.—Texarkana 2006, pet. denied); *see Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990). While the claimant's actions must be of such a character as to unmistakably indicate a claim of exclusive ownership, whether adverse possession of property has been established is normally a question of fact, rather than a question of law. *Justiss*, 202 S.W.3d at 438 (citing *Rhodes*, 802 S.W.2d at 645–46).

Because Janice and Cassie attack the factual sufficiency of an adverse finding on which they had the burden of proof, they must demonstrate that the evidence establishes that the court's finding is against the great weight and preponderance of the evidence. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *see also Ramsey*, 313 S.W.3d at 506; *Dyer v. Cotton*, 333 S.W.3d 703, 709 (Tex. App.—Houston [1st Dist.] 2010, no pet.). We consider, weigh, and

4

examine all of the evidence that supports or contradicts the fact-finder's determination. *Francis*, 46 S.W.3d at 242; *Dyer*, 333 S.W.3d at 709. We set aside the verdict only if the evidence that supports the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Ramsey*, 313 S.W.3d at 506; *Dyer*, 333 S.W.3d at 709 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

Janice grew up on a parcel of land owned by her mother, Cassie, and father, Cecil Johnson, adjacent to the disputed tract. Pursuant to a title search, ownership of the disputed tract of land was traced to Mattie. Mattie died intestate in 1983, leaving the property to her children, Nettie and Joseph. Cecil's uncle, Ora Asa Johnson, married Nettie, connecting the Johnson and Conwright families.[2]

At trial, Janice clarified that she was not seeking title to the disputed property and had filed the lawsuit only on Cassie's behalf. Janice testified that, while she did not personally use the disputed tract of land, her family members had done so throughout the years.[3] The evidence established that, (1) before 1956, Cecil and his sons built a hog pen and had, at some point, raised hogs on the property,[4] (2) in the 1970s, Cecil and his sons removed some timber from the property, (3) over twenty years ago, Janice's brother, Dennis,[5] built a shed on the property to store farm equipment, (4) at various times, Dennis cut hay on the property, (5) two or three years after Cecil's death in 1987, Dennis and Janice's other brothers built a fence, enclosing most of

---

[2]Cassie testified that Nettie married Ora before her marriage to Cecil.

[3]Janice left her family home in 1994.

[4]Cassie testified that hogs were no longer raised on the property after 1994.

[5]Janice testified that Dennis passed away in 2007.

the property, (6) Dennis and Cassie owned between ten and twenty cattle that grazed on the property after the fence was built, (7) Janice's other brother, Ronnie, built a chicken coop and, at one point, had raised chickens on the property, and (8) Ronnie still used the property.

Janice and Ronnie both testified that the shed, chicken coops, and cattle were clearly visible from the road and implied that Nettie would have been able to see the improvements when she visited her daughter who lived on the same street.[6] Cassie testified that Nettie met Cassie at her home every Sunday because they went to church together, that Nettie would have been able to see the fence and the grazing cows, and that Nettie expressed no objection to the use of her property. Janice and Cassie testified that they never discussed any claim of adverse possession with Nettie or Joseph because they were both unaware of who owned the property until the title search was completed just before filing suit.[7]

Nettie's son, James E. Johnson, testified that he has been responsible for the upkeep on a nearby tract and has visited that tract of property regularly. James testified that he first remembered seeing the fence and noticing missing trees seven or eight years before trial. While James did not notice any activity on the property while Cecil was alive, he saw cows grazing on the property when Dennis was alive. James was never made aware that Janice and Cassie were seeking to claim the property as their own, and he testified that Nettie and Joseph paid the property tax on the 7.23 acres.

---

[6]Cassie testified that Nettie also visited Mattie who owned a home on the same street before her death.

[7]Hostile use does not require an intention to dispossess the rightful owner, or even knowledge that there is one. *Tran v. Macha*, 213 S.W.3d 913, 915 (Tex. 2006). But there must be an intention to claim property as one's own to the exclusion of all others. *Id.*

In its take-nothing judgment, the trial court found (1) that Cassie's adverse possession claim was based on Dennis' use of the property, (2) that Dennis passed away in 2007, and (3) that there was no privity of estate between Dennis and Cassie.

As the adverse possession claimant in this case, Cassie was required to show her ownership through her use of the land for at least ten years. Yet, implied in the trial court's judgment in this case was the finding that Dennis was the proper adverse possession claimant because of his continuous use of the property during his lifetime.

"If there is no verbal assertion of claim to the land brought to the knowledge of the landowner, the adverse possession must be so open and notorious and manifested by such open or visible act or acts that knowledge on the part of the owner will be presumed." *Orsborn v. Deep Rock Oil Corp.*, 267 S.W.2d 781, 787 (Tex. 1954). "The fencing of land has long been recognized as visible appropriation." *Justiss*, 202 S.W.3d at 439. An adverse-possession claimant who builds and maintains fences to enclose another's property is exerting an exclusive ownership in himself or herself that is hostile to the landowner. *McDonnold v. Weinacht*, 465 S.W.2d 136, 141 (Tex. 1971) (fence); *see Tran*, 213 S.W.3d at 914.

Janice's brother, Kevin, testified that Dennis was the person who started using the disputed property after Cecil's death. In Janice's deposition, added as an exhibit and referenced by the court during trial, she initially testified that Dennis built the fence two or three years after Cecil passed away in 1987. Later in the deposition, Janice testified that Dennis and her brothers built the fence ten to eleven years before Dennis' death with the help of someone hired by

7

Cassie. At trial, she testified that she knew they were putting up the fence when her mother had a stroke. Janice and Cassie both testified at trial that they built the fence at Cassie's request.

In a bench trial, the trial court, as the fact-finder, is the sole judge of the credibility of the witnesses and the weight given to their testimony. *Alonso v. Alvarez*, 409 S.W.3d 754, 757 (Tex. App.—San Antonio 2013, pet. denied). In resolving factual disputes, the trial court can accept or reject any part or all of a witness' testimony. *Id*. The trial court may believe one witness and disbelieve others and resolves any inconsistencies in a witness' testimony.[8] *Id.* As the finder of fact, the trial court was free to decide that Dennis, who removed trees from the property, built a shed to store farm equipment on the property, cut hay on the property, and appeared to use it continuously, was the person who commissioned and built the fence to secure cows that were owned by him. We find that there was factually sufficient evidence supporting the court's finding that Dennis, not Cassie, maintained and used the property during Dennis' lifetime.[9] Because the trial court found that Cassie's claim was based on Dennis' use of the property, given that Dennis passed away in 2007, the court concluded that Cassie had not exercised exclusive, continuous use of the property for ten years.

The court's findings, however, did not automatically defeat Cassie's claim. It is not always necessary for adverse possession to be by the same person for the statutory period. *See*

---

[8]At trial, Nettie and Joseph's attorney stated, "Judge, I'm just astounded by the way the facts changed from the time of the deposition until we came to trial," to which the court replied, "And I've made note of that, and I've actually read the entire deposition before we got here today."

[9]Cassie did not testify as to when she acquired ownership interest in the cows that grazed on the property, and it was uncertain whether she currently owned cows grazing on the property. Ronnie testified that he had cows on the property, and Janice testified that her mother and brother "had" cows on the property and that her uncle, Charles Robinson, was grazing cattle on the property in 2009. There was no testimony that Ronnie and Robinson sought permission to use the property from Cassie.

8

TEX. CIV. PRAC. & REM. CODE ANN. § 16.023 (West 2002); *Dale v. Stringer*, 570 S.W.2d 414, 416 (Tex. App.—Texarkana 1978, writ ref'd n.r.e.) (citing *Hutto v. Cook*, 164 S.W.2d 513, 515 (Tex. 1942)). The ten-year term may be established by tacking successive use periods if there is "privity of estate" between each successive user. *Boerschig v. Sw. Holdings, Inc.*, 322 S.W.3d 752, 765 (Tex. App.—El Paso 2010, no pet.); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.023); *Dale*, 570 S.W.2d at 416. Privity of estate is established when an earlier user's claim passed or was transferred to a later user. [10] *H.L. Brown & Assocs., Inc. v. McMahon*, 525 S.W.2d 553, 557 (Tex. Civ. App.—Tyler 1975, no writ) (quoting *Hutto*, 164 S.W.2d at 515).

Here, there was no testimony that Dennis in any way conveyed the disputed property to Cassie.[11] Therefore, the trial court found that Cassie's possession of the property since Dennis' death in 2007 could not be combined with Dennis' possession of the property to meet the statutory requirement of ten years' continuous possession. *See Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 342 (Tex. App.—San Antonio 2006, pet. denied).

---

[10]In addition, when title by limitation has matured, there is no further place for tacking and only an instrument in writing can convey the title so matured. *Dale*, 570 S.W.2d at 418.

[11]In a letter to the trial court, Dudley and Cassie advised the court that Dennis "died intestate leaving three children."

9

Based on this record, we cannot conclude that the trial court's finding was so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. Accordingly, we find the evidence factually sufficient to support the trial court's judgment.

We affirm the judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     July 16, 2014
Date Decided:       August 15, 2014