

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00403-CV

Benito Manuel **ALVAREZ** Alonso and Teresa F. Zeevaert Wolff,
Appellants

v.

Lucia Zeevaert **ALVAREZ**,
Appellee

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-09034
Honorable David A. Berchelmann, Jr., Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:       Catherine Stone, Chief Justice
               Marialyn Barnard, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  July 17, 2013

AFFIRMED

Benito Manuel Alvarez Alonso appeals the final divorce decree rendered by the trial court after a bench trial, asserting the trial court erred by: (1) awarding Lucia Zeevaert Alvarez title to a ranch that was his separate property; (2) making a grossly disproportionate division of the community assets; and (3) finding an informal marriage existed between Benito and Lucia after their 1995 divorce.[1]  We overrule Benito's issues and affirm the divorce decree.

---

[1] Although Teresa F. Zeevaert joined the notice of appeal, the divorce decree rendered a take nothing judgment with regard to the claims asserted against her, and no issue is raised on appeal with regard to those claims or the take nothing judgment.

## BACKGROUND

The following general background is a summary from the trial court's findings of fact. The testimony relevant to each specific issue is more fully discussed in our analysis of those issues.

Lucia and Benito were married on March 20, 1980. They were divorced on December 21, 1995, and immediately entered into an informal marriage on that same date. During the informal marriage, Lucia and Benito voluntarily entered into four separate marital property agreements, over the course of four years.

Lucia is a United States citizen. Lucia resides permanently in the United States and has no intention of returning to Mexico to reside. Benito is a Mexican National who travels between the United States and Mexico to conduct business.

In dividing the community estate, Lucia "was awarded all properties in the United States and [Benito] was awarded all properties in Mexico." The properties in the United States "were valued equal to all properties in Mexico, save and except" a lawsuit that involved a business venture of Benito and HSBC, a bank.

## STANDARD OF REVIEW

The issues raised on appeal generally challenge the trial court's findings of fact and conclusions of law. If a trial court makes findings of fact and conclusions of law, we may review the fact findings for legal and factual sufficiency. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id*. at 795. Evidence is factually insufficient to support a finding if the finding is so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We review the trial court's legal conclusions de novo. *BMC Software Belgium, N.V.*, 83 S.W.3d at 794. If we determine a

conclusion of law is erroneous but the trial court nevertheless rendered a proper judgment, the erroneous conclusion does not require reversal. *Id.*

In a bench trial, the trial court, as the factfinder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Dwairy v. Lopez*, 243 S.W.3d 710, 713 (Tex. App.—San Antonio 2007, no pet.). In resolving factual disputes, the trial court can accept or reject any part or all of a witness's testimony. *Id.* The trial court may believe one witness and disbelieve others and resolves any inconsistencies in a witness's testimony. *Id.*

### INFORMAL MARRIAGE

In his third issue, Benito challenges the trial court's finding that he and Lucia entered into an informal marriage on December 21, 1995, the same date the 1995 divorce decree was signed.

A valid informal, or common-law, marriage consists of three elements: (1) agreement of the parties to be married; (2) after the agreement, their living together as husband and wife; and (3) their representing to others that they are married. *Nguyen v. Nguyen*, 355 S.W.3d 82, 88 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (citing TEX. FAM. CODE ANN. § 2.401(a)(2) (West 2006)). "The existence of an informal marriage is a fact question, and the party seeking to establish [the] existence of the marriage bears the burden of proving the three elements by a preponderance of the evidence." *Id.*

Lucia and one of Benito and Lucia's daughters, Tanya, testified that Lucia and Benito were divorced in 1995 to enable the couple's three daughters to become United States citizens before the oldest daughter would begin the college application process. After the divorce, Lucia testified that she and Benito agreed they would continue to be married. Lucia, Tanya, and another daughter, Lucy, testified that Lucia and Benito continued to live together as husband and wife after 1995. In addition to the testimony, photographs were introduced into evidence showing various family activities in which Lucia and Benito participated, including the celebration of their wedding

anniversary. Benito admitted that Lucia and he agreed not to tell their daughters or their family about their 1995 divorce and further admitted he continued to live with Lucia and their daughters. In addition to representing themselves as being married to their daughters and families, Benito referred to Lucia as his wife in letters to a health-care provider and a contractor and represented he was married in his passport applications. The foregoing evidence is sufficient to support the trial court's finding that Lucia and Benito entered into an informal marriage on December 21, 1995, the same date the 1995 divorce decree was signed. Benito's third issue is overruled.

## BUENA VISTA RANCH

In his first issue, Benito contends that the real property known as the Buena Vista Ranch (referred to herein as the ranch) was awarded to him as separate property in the parties' 1995 divorce decree. Accordingly, Benito argues the trial court erred in awarding the ranch to Lucia.

"Section 4.202 [of the Texas Family Code] permits spouses by written agreement to convert separate property to community property."[2] *Long v. Long*, 234 S.W.3d 34, 43 (Tex. App.—El Paso 2007, pet. denied); *see also* TEX. FAM. CODE ANN. § 4.202 (West 2006). An agreement to convert separate property to community property must: (1) be in writing; (2) be signed by the spouses; (3) identify the property being converted; and (4) specify the property is being converted to the spouses' community property. TEX. FAM. CODE ANN. § 4.203 (West 2006).

Lucia and Lucy testified that Benito executed a series of agreements after Lucia discovered Benito was having an affair with her sister. Benito repeatedly reassured Lucia that he would end the affair, and the agreements were executed to reassure Lucia about his promise and her financial security. All of the agreements were introduced into evidence. Each of these agreements identifies

---

[2] "The change in the law required a constitutional amendment, which was approved on November 2, 1999." *Long*, 234 S.W.3d at 43; *see also* TEX. CONST. art. XVI, § 15.

the Buena Vista Ranch as "our" property and agrees to divide the ranch on a 50/50 basis. Although the agreements do not use the term "conversion," the purpose of the agreements was to reassure Lucia by identifying the assets that constituted the community estate and acknowledging that both Lucia and Benito owned 50% of those assets. Accordingly, the trial court could have determined the agreements converted the ranch from Benito's separate property to community property in accordance with section 4.203. Therefore, Benito's first issue is overruled.

## DIVISION OF COMMUNITY ESTATE

In his second issue, Benito contends the trial court erred in dividing the community estate in an unjust and unfair manner.

"We review a trial court's division of property for abuse of discretion." *Garza v. Garza*, 217 S.W.3d 538, 548 (Tex. App.—San Antonio 2006, no pet.). "[L]egal and factual insufficiency are not independent grounds of reversible error; instead they constitute factors relevant to our assessment of whether the trial court abused its discretion." *Id.* at 549.

"When a trial court divides the community estate, it must do so in a manner it deems just and right." *Monroe v. Monroe*, 358 S.W.3d 711, 717 (Tex. App.—San Antonio 2011, pet. denied) (citing TEX. FAM. CODE ANN. § 7.001 (West 2006)). In making a division, the trial court may consider the following non-exclusive factors: (1) the spouses' capacities and abilities; (2) benefits which the party not at fault would have derived from continuation of the marriage; (3) business opportunities; (4) education; (5) relative physical conditions; (6) relative financial condition and obligations; (7) disparity of ages; (8) sizes of separate estates; (9) the nature of the property; (10) fault in the breakup of the marriage; and (11) any wasting of the community assets by one of the spouses. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *Halleman v. Halleman*, 379 S.W.3d 443, 452 (Tex. App.—Fort Worth 2012, no pet.); *Monroe*, 358 S.W.3d at 717. Community property does not have to be divided equally, but the division must be equitable. *Halleman*, 379

S.W.3d at 452. A disproportionate division must be supported by some reasonable basis. *Id.*; *Fischer-Stoker v. Stoker*, 174 S.W.3d 272, 277 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

From the evidence presented in this case, the trial court could have found that Benito became a highly successful businessman during the marriage, while Lucia remained at home caring for their three daughters. The trial court could have further found that Benito has more education and greater business opportunities than Lucia. The trial court expressly found that Benito was entitled to receive the proceeds from the $25 million dollar judgment that his company obtained in Mexico,[3] and that Benito owned numerous businesses and properties in Mexico. With regard to the value of the assets in Mexico and Benito's income, the trial judge expressly stated on the record that he did not find Benito credible and he suspected Benito actually had more money than he disclosed in court and had already been paid "a good chunk" of the judgment. Finally, the trial court could have found Benito's affair with Lucia's sister caused the breakup of the marriage and Lucia would have continued to derive benefits from Benito's businesses, the judgment, and his greater earning capacity if the marriage had continued. Given the parties' relative earning capacities, the size of Benito's separate estate which the trial court suspected had not been fully disclosed, and Benito's adultery and fault in the breakup of the marriage which ultimately resulted in Benito having "born a child out of wedlock with [Lucia's] sister," we hold the trial court did not abuse its discretion in its division of the community estate. Accordingly, Benito's second issue is overruled.

---

[3] Although Benito challenges the trial court's finding regarding this judgment, Tanya testified that her father told her that he had won a settlement against a bank in Mexico and had already been paid $2 million of that settlement. Tanya also testified that her uncle told her that her father "would be receiving a large sum of money up to the amount of about $20 million." Lucy also testified her father told her that he was being paid by a bank through a lawsuit in Mexico. Finally, David Cohen Sacal, an attorney in Mexico, identified legal documents that were admitted into evidence relating to the lawsuit and testified that a final judgment was entered for approximately $30 million.

## CONCLUSION

The trial court's judgment is affirmed.

Luz Elena D. Chapa, Justice