

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00519-CV

Robert **SAMANIEGO**,
Appellant

v.

Mary **SAMANIEGO**,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 12-0784-CV
Honorable W.C. Kirkendall, Judge Presiding

Opinion by:   Marialyn Barnard, Justice

Sitting:        Catherine Stone, Chief Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  June 25, 2014

AFFIRMED

Appellant Robert Samaniego appeals from a final decree of divorce.  On appeal, Robert raises four issues, contending he was denied his rights to Due Process and Due Course of Law under the United States and Texas Constitutions when: (1) the attorneys committed fraud; (2) the trial court divided the community property using "inaccurate property details and appraisal valuation," rendering the judgment void; (3) the trial court awarded all of the retirement benefits and life insurance to his wife; and (4) the trial court failed to determine if the real property and house were subject to partition in kind.  We affirm the trial court's judgment.

**BACKGROUND**

The parties were married in 1993. In late 1994 or early 1995, they purchased certain real property, a little over half an acre, upon which was a two-bedroom trailer. Mary testified Robert paid the $800.00 down payment, but that she paid the $200.00 closing costs and thereafter paid the $255.00 monthly mortgage. Robert claimed payments were made from his paycheck, which he turned over to Mary. Robert turned the trailer house into a house, completing the construction himself. Robert stated he spent $48,000.00 in materials during this process. Mary testified, however, that after he made the original down payment, Robert did not contribute any money toward the purchase or improvement of the property. Mary testified that later, after Robert left her, she used her own money to make repairs and improvements to the house, a claim Robert denied.

According to Mary, Robert had several affairs during their marriage. The parties ultimately separated in 2006. Robert eventually moved in with the woman with whom he was having an affair. Admittedly, Robert and the other woman had a child in 2007. Robert was gone for more than a year, but claims he returned to his marriage. Robert stated that when he returned, he paid for the repairs and improvements to the house with his unemployment checks, which he turned over to Mary, much as he had his paychecks before he left.

Sometime before 2009, Robert was charged with four counts of aggravated assault with a deadly weapon. Mary claimed that to raise money for an attorney, they took out a $3,000.00 loan, using her vehicle as collateral. Mary stated she paid off the loan. Robert testified the loan was for home improvements and payments on the loan were made out of his checks. Robert was ultimately convicted on all counts and was sentenced to eighteen years' confinement in the Texas Department

of Criminal Justice—Institutional Division. Robert testified he is not eligible for parole until 2018.[1]

Other than personal property, the parties' only community property included the real property with the house and Mary's retirement and insurance. Mary has worked at Texas State University as the head custodian since 1992, and continues to work there. She expects to receive retirement benefits when she retires in ten or more years. With regard to the value of the house, the court admitted into evidence a tax appraisal from the Guadalupe County Appraisal District. This document, dated April 17, 2013 — the day before the trial — stated the value of the property and the home to be $22,001.00. The document was introduced into evidence by Robert's counsel and admitted without objection. There was no evidence admitted by either side with regard to the value of Mary's retirement benefits. There was a discussion about Mary's life insurance policy, which she obtained through her employment. Mary stated she had offered to make Robert a $10,000.00 beneficiary of her life insurance. The court responded that she could do that if she wished.

Despite having introduced the appraisal, Robert testified the property had to be worth at least $90,000.00 because he had made $48,000.00 worth of improvements when he turned the trailer into a house. Robert testified he had turned a two-bedroom trailer into a three-bedroom house with a living room, dining room, television room, bathrooms, kitchen and foyer. However, Robert presented no evidence in support of his testimony.

With regard to personal property, Mary claimed that when Robert left in 2006, he took a great deal of personal property with him, including a vehicle. Robert denied taking a large amount of the personal property with him. He further stated the vehicle he took was not his, but belonged

---

[1] Robert appeared at trial telephonically due to his incarceration.

to a friend and Mary had damaged it, requiring him to spend $1,000.00 to repair it before he returned it. He admitted his family went to the house at some point and took a chair and a bass boat, which he valued at only $150.00. He was unsure of other items his family may have taken, but he testified his family took the items to keep Mary from damaging them.

There was also a dispute over whether the divorce should be a no-fault divorce or there were fault grounds for the divorce, including adultery and abuse. Mary claimed Robert had at least four affairs during the marriage, but Robert claimed there was only one. Mary also claimed Robert abused her mentally and physically during the marriage, but admitted she never reported the abuse. Robert denied ever abusing Mary.

The trial court granted the divorce and rendered a final decree of divorce, which was signed June 28, 2013. In the decree, the trial court stated a divorce was granted to Mary on grounds of adultery and cruelty. The trial court awarded Robert certain personal property, including: fishing equipment, a shop vacuum, a table saw, a miter saw, an air compressor, a skill saw, tools, a freezer, a storage shed, a riding lawnmower, clothes, two windows, a watch and ring, a stereo, a painting, and the proceeds from the sale of several items including a truck and a boat. Robert was also awarded all cash and accounts in his sole possession, a 1998 Buick Century, and a bass boat. The trial court also ordered Mary to pay Robert $1,500.00 from an owelty lien on the real property. With regard to debt, Robert was ordered to assume any debts he incurred after February 3, 2007, as well debt associated with a lumber account and a finance account.

With regard to Mary, the trial court awarded her the real property and the house thereon, a 1995 Lexus, and all cash and accounts in her name, as well as any antiques, artwork, or jewelry in her sole possession. The trial court also awarded Mary all of her retirement benefits and any life insurance policies insuring her life. Mary was ordered to assume any debt relating to the real property.

In July 2013, Robert discharged his attorney. Thereafter, acting in a pro se capacity, Robert filed several post judgment motions. Subsequently, Robert perfected this appeal.

## ANALYSIS

As noted above, Robert raises four issues on appeal. In each issue, he contends his due process and due course of law rights were violated.

### *Fraud by Counsel*

Robert first contends his rights were violated because his attorney and opposing counsel committed fraud. More specifically, he contends the tax appraisal document, which contained property details and valuation, was fraudulent in that it omitted certain information. As to opposing counsel, Robert contends she must have downloaded the appraisal document, which was admitted into evidence, and thereafter committed fraud by transmitting the document to his attorney. With regard to his attorney, Robert contends he committed fraud — to cover up his lack of diligence — by admitting the appraisal document into evidence when the testimony established the document was fraudulent as it described the property as having a mobile home, not a house.

Robert has not preserved this complaint for our review. Generally, to preserve a complaint for appellate review, the complaining party is required to make a timely objection in the trial court stating the grounds for the ruling the party seeks with sufficient specificity to advise the trial court of the complaint — unless the grounds are apparent from the context — and obtain a ruling from the trial court. *Office of Attorney Gen. of Tex. v. Burton*, 369 S.W.3d 173, 175 (Tex. 2012); *Thota v. Young*, 366 S.W.3d 678, 689 (Tex. 2012); TEX. R. APP. P. 33.1(a). We recognize that it might have been difficult for Robert to object to the alleged fraud during the trial given he would have been objecting pro se while represented by counsel. However, Robert discharged his attorney after the trial and filed numerous pro se post judgment motions, i.e., a motion for new trial and a motion

to modify judgment. Robert did not raise the issue of the alleged fraud in any of his post judgment motions. Accordingly, we hold Robert has not preserved this issue for our review.

### *Inaccurate Appraisal and Fraud*

Robert next contends his rights were violated when the trial court divided the community property "using inaccurate property details and appraisal valuation." Robert asserts this rendered the judgment void. Robert again argues fraud with regard to the appraisal document.

This issue appears to be repetitive, in part, of the prior issue. In that regard, the issue is waived for the reasons discussed above. As to the alleged use of "inaccurate property details and appraisal valuation," there is nothing in the record, other than Robert's own testimony, to contradict the valuation of the property contained within the document prepared by the Guadalupe County Appraisal District. Robert testified he spent $48,000.00 in materials when he turned the trailer into a house, and given this, he estimated the value of the property at $90,000.00. However, Robert did not provide any documentation to support his testimony, and the appraisal document, which was admitted into evidence *by Robert*, establishes the value of the property to be $22,001.00. Accordingly, we overrule this issue because the evidence supports the valuation used by the trial court.

### *Division of Retirement Benefits and Insurance*

Robert next contends the trial court erred in awarding Mary one hundred percent of Mary's retirement benefits and her insurance policies. Robert argues that because the retirement benefits and life insurance policies — there was only evidence of a single life insurance policy through Mary's employer — were community property, he was entitled to a portion of the benefits from those items.

Section 7.001 of the Texas Family Code requires a trial court in a divorce proceeding to divide the community estate "in a manner that the court deems just and right, having due regard

for the rights of each party and any children of the marriage." Tex. Fam. Code Ann. § 7.001 (West 2006); *see Alonso v. Alvarez*, 409 S.W.3d 754, 758 (Tex. App.—San Antonio 2013, pet. denied). Community property need not be divided equally; rather, the division must merely be equitable under the circumstances. *Alonso*, 409 S.W.3d at 758. Moreover, a disproportionate division is not prohibited as long as there is a reasonable basis for such division. *Id.* at 758–59.

A trial court has broad discretion in dividing the community estate, and absent a clear abuse of discretion, an appellate court will not disturb that division. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex.1998); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Halleman v. Halleman*, 379 S.W.3d 443, 452 (Tex. App.—Fort Worth 2012, no pet.). It is the duty of the appellate court to presume the trial court properly exercised its discretion in dividing the marital estate. *Murff*, 615 S.W.2d at 699. A trial court abuses its discretion only when it acts arbitrarily or unreasonably, or without reference to guiding rules and principles of law. *Everett v. Everett*, 421 S.W.3d 918, 920 (Tex. App.—El Paso 2014, no pet.); *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.). Our courts have held a trial court may consider the following non-exclusive factors in exercising its discretion:

> (1) the spouses' capacities and abilities;
> (2) each spouse's education;
> (3) the relative financial conditions and obligations of the parties;
> (4) the size of the separate estates;
> (5) the nature of the property;
> (6) disparities in earning capacities and income;
> (7) fault of the breakup of the marriage; and
> (8) any wasting of the community assets by one of the spouses.

*Murff*, 615 S.W.2d at 699. The particular facts and circumstances of the case dictate what factors should be considered. *Young v. Young*, 609 S.W.2d 758, 761 (Tex. 1980).

The evidence establishes Robert is incarcerated until at least the year 2018. Accordingly, by his own actions, his earning capacity is limited. However, once he is released, he will be able

to seek employment based on his experience in the construction business. Mary is, and has been, employed as the head custodian at a state university since 1992. She intends to continue this employment until her retirement. Neither spouse provided evidence of advanced education. With regard to their relative financial conditions, Mary, who is employed, is obviously in a better financial condition than Robert. However, during the marriage, according to Mary, she provided most of the financial support for the parties, with Robert experiencing periods of unemployment. The parties' separate estates consist of personal property with limited value. As to the issue of wasting of community assets, Mary testified she was forced to obtain a loan with her vehicle as collateral to pay an attorney with regard to Robert's criminal actions. Mary stated she was forced to repay the loan, but for a single payment, to retain her vehicle.

With regard to fault in the breakup of the marriage, Mary sought a divorce on several fault-grounds, including: insupportability, adultery, abandonment, and cruelty. The trial court granted a divorce to Mary based upon grounds of adultery and cruelty. As noted above, the supreme court has held fault in the breakup of a marriage may be considered by the trial court in determining a just and right division. *Id.*

Mary testified Robert had four affairs she knew about during their marriage. Robert admitted to one affair, which produced a child. Admittedly, Robert left Mary for the mother of the child and ultimately moved in with her. Mary also testified Robert was physically and mentally abusive during the marriage, and it is undisputed that Robert was sentenced to eighteen years in prison for four counts of aggravated assault with a deadly weapon.

Based on the evidence of fault, as well as consideration of the other non-fault factors, we hold the trial court did not clearly abuse its discretion in awarding Mary one hundred percent of her retirement benefits and the single life insurance policy she obtained through her employment. Under the circumstances — adultery, abuse, Robert's incarceration, Robert's ability to work after

he is released, the amount of the separate estates, etc. — we hold the division with regard to the retirement benefits is not so unequitable as to constitute a clear abuse of discretion. *See Alonso*, 409 S.W.3d at 758. As stated above, a disproportionate division is not prohibited as long as there is a reasonable basis for such division, and here, the trial court had a reasonable basis for its division. *See id.* at 758–59.

### *Partition in Kind*

Finally, Robert contends he was denied his due process and due course of law rights when the trial court "failed to determine if the real estate and house were subject to partition in kind." Admittedly, a trial court, in making a just and right division in a divorce proceeding, has a duty to initially determine if the parties' community property is subject to partition in kind. *Hailey v. Hailey*, 160 Tex. 372, 331 S.W.2d 299, 303 (1960). If the property is subject to partition in kind, the trial court must equitably divide the community property between the parties. *Id.*; *In re Marriage of Edwards*, 79 S.W.3d 88, 96 (Tex. App.—Texarkana 2002, no pet.). If the property is not subject to partition in kind, the trial court may appoint a receiver and order so much of the property as is incapable of partition to be sold and the proceeds divided in a just and fair manner. *Edwards*, 79 S.W.3d at 96.

Here, however, it was unnecessary for the trial court to make a partition in kind determination with regard to the house and the real property because the court awarded such property in its entirety to Mary. Robert has not generally challenged the trial court's division of the community property. He did not raise an issue relative to the division of the real property and the house except to contend the attorneys committed fraud and the trial court relied upon an improper valuation — issues which we have already addressed. Rather, Robert has complained about the trial court's division of community property only as it relates to Mary's retirement and her insurance policies. Accordingly, because it was unnecessary for the trial court to consider

partition in kind with regard to the house and real property, given that it was awarded to Mary in its entirety, we overrule this issue.

## CONCLUSION

Based on the foregoing, we overrule Robert's issues and affirm the trial court's judgment.


Marialyn Barnard, Justice