

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00026-CV

Rose Marie **WEAVER**,
Appellant

v.

John G. **PREDDY**,
Appellee

From the 38th Judicial District Court, Uvalde County, Texas
Trial Court No. 2016-05-31156-CV
Honorable Camile Glasscock Dubose, Judge Presiding

Opinion by: Marialyn Barnard, Justice

Sitting: Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Patricia O. Alvarez, Justice

Delivered and Filed: December 5, 2018

AFFIRMED

Rose Marie Weaver appeals a final decree of divorce which was based on an interlocutory

order finding Weaver and John G. Preddy were informally married in April of 1994.[1]  The trial

court entered the interlocutory order after a bench trial on the issue of the existence of an informal

marriage.  In three issues, Weaver asserts: (1) the evidence is legally and factually insufficient to

support the trial court's finding that Weaver and Preddy were informally married; (2) the trial court

---

[1] In the order, the trial judge handwrote the date the informal marriage began.  Although the month and year of the date inserted are readily determinable, the day is not.

erred in characterizing certificates of deposit and a retirement account as community property; and (3) the trial court abused its discretion in awarding Preddy a disproportionate amount of the cash, certificates of deposit, and retirement accounts. We affirm the trial court's orders.

## INFORMAL MARRIAGE

In her first issue, Weaver challenges the sufficiency of the evidence to support the trial court's finding that Weaver and Preddy were informally married beginning in April of 1994.

The existence of an informal marriage is a question of fact, and the party seeking to establish the existence of the marriage bears the burden to prove its existence by a preponderance of the evidence. *Alonso v. Alvarez*, 409 S.W.3d 754, 757 (Tex. App.—San Antonio 2013, pet. denied); *Small v. McMaster*, 352 S.W.3d 280, 282-83 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). If there is more than a scintilla of evidence to support the trial court's finding, a legal sufficiency challenge fails. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *Alonso*, 409 S.W.3d at 757. Evidence is factually insufficient to support a finding if the finding is so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Alonso*, 409 S.W.3d at 757; *Small*, 352 S.W.3d at 283.

"In a bench trial, the trial court, as the factfinder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Alonso*, 409 S.W.3d at 757; *Small*, 352 S.W.3d at 283. "In resolving factual disputes, the trial court can accept or reject any part or all of a witness's testimony." *Alonso*, 409 S.W.3d at 757. "The trial court may believe one witness and disbelieve others and resolves any inconsistencies in a witness's testimony." *Id*.

"A valid informal, or common-law, marriage consists of three elements: (1) agreement of the parties to be married; (2) after the agreement, their living together as husband and wife; and (3) their representing to others that they are married." *Alonso*, 409 S.W.3d 754, 757 (Tex. App.—San Antonio 2013, pet. denied); *see also Nguyen v. Nguyen*, 355 S.W.3d 82, 88 (Tex. App.—

Houston [1st Dist.] 2011, pet. denied).  The following summarizes the evidence admitted at trial as to each of the three elements.

### A.     Agreement to be Married

If the proponent of an informal marriage does not commence a proceeding to prove the marriage within two years of the date on which the parties to the alleged marriage separated and ceased living together, then there is a rebuttable presumption the parties did not enter into an agreement to be married.  TEX. FAM. CODE ANN. § 2.401(b); *Joplin v. Borusheski*, 244 S.W.3d 607, 611 (Tex. App.—Dallas 2008, no pet).  The effect of a presumption is to force the party against whom it operates to produce evidence to negate the presumption.  *Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex.1993); *Joplin*, 244 S.W.3d at 611.

In this case, the underlying divorce proceeding was filed on May 18, 2016.  The evidence at trial was conflicting regarding the date Preddy and Weaver separated.  Preddy testified they separated in June of 2014.  Although Weaver's testimony was less clear on a specific date, Weaver also refers to Preddy leaving in June of 2014.  Because the trial court could have believed Preddy's testimony, the trial court could have determined the underlying proceeding was filed within two years of the date Preddy and Weaver separated, and, therefore, the presumption did not apply.

An agreement to be informally married, like any ultimate fact, may be established by direct or circumstantial evidence.  *See Russell v. Russell*, 865 S.W.2d 929, 933 (Tex.1993); *Small*, 352 S.W.3d at 283.  To establish an agreement to be married, "the evidence must show the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife."  *Eris v. Phares*, 39 S.W.3d 708, 714 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).  The testimony of one of the parties to the marriage constitutes some direct evidence that the parties agreed to be married.  *Small*, 352 S.W.3d at 283; *Eris*, 39 S.W.3d at 714.

In this case, Preddy testified he and Weaver agreed to be married in 1994. Although Weaver denied any such agreement, the trial court, as the trier-of-fact, could disbelieve her testimony. Weaver acknowledged she and Preddy acquired multiple properties during their relationship. Real estate documents spanning a period from 1993 to 2007 were introduced into evidence establishing properties were conveyed jointly to Preddy and Weaver, and the documents referred to Weaver as Preddy's wife or spouse. Although Weaver denied any knowledge that the documents referred to her as Preddy's wife or spouse, the notarization immediately following her signature on some of the documents reflected she was signing as Preddy's wife or spouse. Furthermore, Preddy testified Weaver was actively engaged in the transactions and understood the documents better than he did. In addition to the real estate documents, hospital records were introduced documenting the births of three of Preddy and Weaver's children in 1994, 2000, and 2002, which reflected Weaver's status as married. Weaver also signed the hospital records using variations of the name Rose Preddy. Although Preddy submitted a letter to the Texas Medical Board stating he was never married to Weaver, Preddy testified he made the statement based on his fear regarding the investigation, which partially involved Preddy's relationship with Weaver's daughter from her first marriage.

B.     Living Together as Husband and Wife

Preddy testified he and Weaver lived together raising their family from 1994 to 2014. Although Weaver testified she maintained a separate residence in another city, she admitted she "partially" lived in the same house as Preddy and their children. Preddy and Weaver's oldest son testified he lived together with his parents in the same house from 1995 to 2008. Even witnesses called by Weaver to testify as to whether Preddy and Weaver presented themselves to others as married testified Preddy and Weaver lived together.

C.      Presenting to Others

"The statutory requirement of 'presenting to others' is synonymous with the judicial requirement of 'holding out to the public.'" *Small*, 352 S.W.3d at 284-85. "Whether the evidence is sufficient to establish that a couple held themselves out as husband and wife turns on whether the couple had a reputation in the community for being married." *Id*. at 285. "Proving a reputation for being married requires evidence that the couple consistently conducted themselves as husband and wife in the public eye or that the community viewed them as married." *Id.* (internal quotation omitted).

In addition to the real estate and hospital records which refer to Preddy and Weaver as married, Preddy testified they held themselves out as married and introduced themselves as husband and wife. Weaver's daughter from her first marriage and Preddy and Weaver's oldest son also testified Preddy and Weaver referred to themselves as being married. A supervisor at a local hospital further testified Preddy and Weaver had a general reputation in the community as being married. Although Weaver and several friends she called as witnesses testified to the contrary, the trial court could disbelieve their testimony.

D.      Conclusion

Having reviewed the record as a whole and deferring to the trial court's evaluation of the credibility of the witnesses and the weight to be given the evidence, we hold the evidence is legally and factually sufficient to support the trial court's finding that Preddy and Weaver were informally married beginning in April of 1994.[2]

---

[2] In his brief, Preddy contends Weaver judicially admitted the existence of the informal marriage in a pleading she filed after the trial court entered the interlocutory order finding an informal marriage existed. Preddy also contends the existence of an informal marriage was deemed admitted based on Weaver's failure to timely respond to requests for admission. Because we hold the evidence supported the trial court's finding, we do not address these alternative arguments. *But see Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989) (noting party relying on judicial admissions or deemed admissions must protect the record by objecting to introduction of controverting evidence or right to rely on admissions is waived).

**CHARACTERIZATION OF CERTIFICATES OF DEPOSIT AND RETIREMENT ACCOUNT**

In her second issue, Weaver asserts the trial court erred in characterizing certificates of deposit and a retirement account as community property.

Under Texas law, property possessed by either spouse during or on dissolution of the marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003. "Parties claiming certain property as their separate property have the burden of rebutting the presumption of community property." *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011). "To do so, they must trace and clearly identify the property in question as separate by clear and convincing evidence." *Id.*; *see also Roberts v. Roberts*, 402 S.W.3d 833, 838 (Tex. App.—San Antonio 2013, no pet.).

"Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property." *Roberts*, 402 S.W.3d at 838; *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 354 (Tex. App.—Austin 2002, pet. denied). "When tracing separate property, it is not enough to show that separate funds could have been the source of a subsequent deposit of funds." *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.). "The clear and convincing evidence standard is generally 'not satisfied by testimony that property ... is separate property when that testimony is contradicted or unsupported by documentary evidence tracing the asserted separate nature of the property.'" *Roberts*, 402 S.W.3d at 838-39 (quoting *Graves v. Tomlinson*, 329 S.W.3d 128, 139 (Tex. App.—Houston [14th Dist.] 2010, pet. denied)). "Any doubt as to the character of property should be resolved in favor of the community estate." *Boyd*, 131 S.W.3d at 612.

Where the party with the burden of proof challenges a trial court's characterization of property, the evidence is legally insufficient "only if there is no evidence to support the trial court's finding it was community property *and* if the separate status of the property is conclusively

established." *Mora v. Mora*, No. 04-12-00638-CV, 2014 WL 769441, at *3 (Tex. App.—San Antonio Feb. 26, 2014, no pet.) (mem. op.) (internal quotation omitted). "In reviewing for factual sufficiency, we review all of the evidence, giving due consideration to evidence the factfinder could have reasonably found to be clear and convincing, to determine whether the trier of fact could reasonably conclude that it is 'highly probable' that the property is separate." *Id*. (internal quotation omitted). "A factual sufficiency challenge will fail if the evidence is insufficient to produce in the mind of the trier of fact a firm belief or conviction as to the property's separate property character." *Id*. (internal quotation omitted). The trial court, as the fact-finder, "is the sole judge of the credibility of the witnesses and may accept or reject any or all of a witness's testimony." *Id*. at *7.

At trial, Weaver produced only her testimony in an effort to prove the certificates of deposit and retirement account were her separate property. Her testimony, however, was contradicted by Preddy's testimony, and she did not produce any documentary evidence necessary to trace the origin of the certificates of deposit or retirement account. "Without any tracing of the funds, we cannot conclude [Weaver's] mere testimony rebutted the presumption that the [certificates of deposit and retirement account] were community property." *Lyons v. Lyons*, No. 04-08-00259-CV, 2009 WL 89728, at *3 (Tex. App.—San Antonio Jan. 14, 2009, pet. denied); *see also Roberts*, 402 S.W.3d at 838-39 (noting party's own testimony fails to rebut community presumption by clear and convincing evidence "when that testimony is contradicted or unsupported by documentary evidence tracing the asserted separate nature of the property").

#### DISPROPORTIONATE DIVISION

In her final issue, Weaver contends that the trial court awarded Preddy more of the cash assets and bank accounts than the trial court awarded to Weaver.

A trial court divides the parties' community property "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001. This "just and right" standard is the sole method to account for and to divide community property upon divorce. *Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998). "Such a standard may at times lead to a disproportionate division of assets and liabilities of the parties, depending on the circumstances that courts may consider in refusing to divide the marital estate equally." *Id*. Although the property division is not required to be equal, a reasonable basis must be shown to support an unequal division. *Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981); *O'Carolan v. Hopper*, 414 S.W.3d 288, 311 (Tex. App.—Austin 2013, no pet.). We review a trial court's division of property under an abuse of discretion standard. *O'Carolan*, 414 S.W.3d at 311.

In analyzing whether a disproportionate division exists, we consider all of the assets and liabilities of the parties. *Schlueter*, 975 S.W.2d at 588. In her brief, Weaver focuses only on the division of certain bank accounts, certificates of deposit, and cash on hand. In arguing this issue in her brief, Weaver does not make any reference to any of the other assets, nor does she make reference to the liabilities. In fact, in her brief, Weaver asserts she "is not challenging the trial court's division of the real property, the vehicles and personal property." Because Weaver fails to discuss the trial court's division of all of the assets and liabilities, she has not shown a disproportionate division exists. *See Logsdon v. Logsdon*, No. 02-14-00045-CV, 2015 WL 7690034, at *9 (Tex. App.—Fort Worth Nov. 25, 2015, no pet.) (mem. op.) ("Like types of property in the community estate need not be divided equally between the spouses."). Accordingly, her third issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Marialyn Barnard, Justice