

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-20-00540-CV

**IN THE INTEREST OF B.R.Q.**, a Child

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-PA-02216
Honorable Richard Garcia, Judge Presiding

Opinion by: Irene Rios, Justice

Sitting: Patricia O. Alvarez, Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: March 31, 2021

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her child, Amy.[1] Although the trial court terminated Mother's parental rights under several statutory predicate grounds, Mother only challenges the sufficiency of the evidence supporting the termination under subsection 161.001(b)(1)(P) of the Texas Family Code. Mother also challenges the sufficiency of the evidence supporting the trial court's finding that termination was in Amy's best interest. We affirm the trial court's order.

---

[1] To protect the identity of a minor child in an appeal from an order terminating parental rights, we refer to the parent as "Mother" and "Father" and the child using the pseudonym "Amy." *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2). The trial court's order terminates Mother's and Father's parental rights to the child, but only Mother appeals the trial court's order.

## BACKGROUND

The Department of Family and Protective Services (the "Department") initially became involved in the underlying case on October 29, 2019, when Mother was driving while intoxicated with Amy in the vehicle.  Mother crashed into a parked vehicle and law enforcement discovered Amy strapped into a car seat that was not properly secured.  Law enforcement took Amy to a children's shelter and referred the case to the Department when it could not locate a parent or guardian to take custody of her.

On October 31, 2019, the Department filed a petition for termination of parental rights and sought non-emergency removal of Amy because Mother was incarcerated, and the Father was unknown.[2]  Ultimately, Amy was placed in the maternal aunt and uncle's home.[3]

On September 30, 2020, the trial court held a bench trial.  Mother was incarcerated during trial, but attended the trial by telephone and testified on her own behalf.  The trial court also heard testimony from Miguel Escobar, the caseworker, and D.S., a CASA volunteer assigned to the case.  On October 19, 2020, the trial court rendered an order terminating Mother's parental rights to the child.  Specifically, the trial court terminated Mother's parental rights based on five statutory predicate grounds in section 161.001(b)(1) of the Texas Family Code.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), and (P).  The trial court also found that termination of Mother's parental rights was in the child's best interest.  *See id*. § 161.001(b)(2).  Mother appealed.

## STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate

---

[2] An alleged father took custody of Amy until DNA testing showed he was not the father.  The father was still unknown at the time of trial.

[3] We refer to the maternal aunt and uncle as "Aunt" and "Uncle."

grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a

reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at \*2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's judgment regarding credibility determinations. *Coburn*, 433 S.W.3d at 823–24.

### STATUTORY GROUNDS FOR TERMINATION

On appeal, Mother argues the evidence is legally and factually insufficient to support a finding that Mother "used a controlled substance . . . in a manner that endangered the health or safety of the child, and: (i) failed to complete a court-ordered substance abuse treatment program; or (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(P).

Only one predicate ground finding under section 161.001(b)(1) is necessary to support a termination judgment when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, our analysis is usually complete if we conclude the evidence is sufficient to support any single predicate ground.[4]

---

[4] Although termination under section 161.001(b)(1)(D) and (E) implicates significant due process concerns for Mother, we only need to address those grounds if Mother challenges the findings on those grounds on appeal. *See In re C.W.*, 586 S.W.3d 405, 407 (Tex. 2019) ("[W]hen a trial court makes a finding to terminate parental rights under section 161.001(b)(1)(D) or (E) and the parent challenges that finding on appeal, due process requires the [reviewing]

Here, the trial court found evidence Mother "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child . . . [and] engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child . . . ." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). The trial court also found evidence Mother constructively abandoned the child and failed to comply with provisions of the service plan ordered by the court. *See id.* § 161.001(b)(1)(N), (O). Because Mother did not challenge the sufficiency of the evidence on any of these grounds, we need not consider whether the evidence would support termination under subsection (P). *See A.V.*, 113 S.W.3d at 362 (holding only one statutory predicate ground is necessary to support an order of termination when there is also a finding that termination is in the best interest of the child); *see also* TEX. R. APP. P. 47.1 (stating appellate courts need only address issues necessary to the final disposition of an appeal). Accordingly, Mother's first issue is overruled.

## BEST INTEREST OF THE CHILD

Mother further argues the evidence is legally and factually insufficient to support a finding that termination of her parental rights was in Amy's best interest.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

---

court to review that finding and detail its analysis."); *see also* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M); *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019). Because Mother has not challenged the trial court's findings under subsections (D) and (E), we do not address them here.

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[5] *See id.* § 263.307(b). We also consider the *Holley* factors.[6] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dept. of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding

---

[5] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

[6] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

*Child's Desires, Age, and Vulnerabilities*

"When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied). Amy was born in October 2019 and was less than a year old at the time of trial. Escobar testified Amy has been placed with Aunt and Uncle since December 2019 and has bonded with them. Escobar further testified Aunt and Uncle have been attentive to accommodate Amy's needs. For example, Aunt and Uncle have adapted Amy's diet to address her issues with constipation and have worked with an occupational therapist to address Amy's lack of mobility in her neck. Escobar testified that Amy is making significant improvements regarding her constipation and neck mobility under the care of Aunt and Uncle. *See In re S.D.*, 980 S.W.2d 758, 764 (Tex. App.—San Antonio 1998, pet. denied) (holding it was in the children's best interests to place them "in a stable environment where they can receive proper care for their special needs"). In contrast, Mother has spent less than a month with Amy due to her incarceration. Mother testified she participated in twenty-minute video calls with Amy every two weeks during the pendency of the case, and these calls sufficiently established a bond between Mother and Amy. However, Escobar gave a lay opinion that it is hard to make a connection and bond over video with a child as young as Amy.

Accordingly, the record reflects that Amy has bonded with Aunt and Uncle, is well-cared for by them, and has spent minimal time with Mother. *See S.J.R.-Z.*, 537 S.W.3d at 693.

*Emotional and Physical Needs of the Child, Dangers to the Child, and Plans for the Child*

"The need for permanence is the paramount consideration for the child's present and future physical and emotional needs." *Dupree*, 907 S.W.2d at 87. "This court considers a parent's conduct before and after the Department's removal of the child[]." *S.J.R.-Z.*, 537 S.W.3d at 693. A child's young age renders her vulnerable if left in the custody of a parent who is unable or unwilling to protect her or attend to her needs. *Id.*

Mother admitted at trial that she was driving while intoxicated with Amy in the vehicle. Escobar testified that Amy's car seat was not properly secured in the vehicle and the entire car seat, with Amy in it, shifted from its position when Mother crashed into a parked vehicle. Escobar testified that driving while intoxicated with an infant in the vehicle shows a lack of judgment for the health and well-being of the infant, who is inherently vulnerable because of her young age. Mother also admitted she previously pled guilty and was convicted of injury to a child against two of her other children. *See In re J.J.O.*, No. 04-18-00425-CV, 2018 WL 5621881, at *2 (Tex. App.—San Antonio Oct. 31, 2018, no pet.) (mem. op.) ("A parent's criminal activities and history are relevant to a best[-]interest analysis."); *see also E.D.*, 419 S.W.3d at 620 (holding a factfinder in a parental termination case may judge a parent's future conduct by her past conduct).

Escobar further testified he did not believe Mother can meet Amy's physical and emotional needs. Escobar explained Mother is currently incarcerated and, therefore, unable to meet Amy's present physical and emotional needs. *See J.J.O.*, 2018 WL 5621881, at *2 ("Criminal conduct, prior convictions, and incarceration affect[] a parent's life and h[er] ability to parent, thereby subjecting h[er] child to potential emotional and physical danger."). Mother was arrested less than a month after Amy was born and, at the time of trial, had been incarcerated during the entire

pendency of the case. "A parent's lengthy absence from a child's life during her early years due to incarceration creates an 'emotional vacuum' that threatens the child's emotional well-being and indicates that the parent-child relationship is not a proper one." *In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied) (internal quotations and alterations omitted). Although Mother testified she expected to be released on parole, Escobar testified Mother will face obstacles upon her release that would preclude her from focusing on Amy's physical and emotional needs. *Cf. id.* at 56 ("[A] parent's testimony about parole eligibility, even if undisputed, is generally not binding on a factfinder because parole decisions are inherently speculative and rest entirely within the parole board's discretion." (internal quotations omitted)). Moreover, Mother would not be able to care for Amy immediately upon her release because she does not have stable housing, does not have any way to support herself or the child, and is expected to live in a halfway house when released from jail.[7] *See id.* at 57 (considering Mother's unstable housing situation, and intent to live in a halfway house, as a factor in favor of termination in best-interest analysis). In Escobar's opinion, returning Amy to Mother—upon Mother's release from incarceration—would be a danger to Amy. *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." (citing *S.D.*, 980 S.W.2d at 763)).

Escobar testified the Department's permanency plan is for Amy to be adopted by Aunt and Uncle. *See J.L.B.*, 2017 WL 4942855, at *7 ("A child's need for permanence is a paramount

---

[7] Escobar testified Mother was expected to live in a halfway house upon her release. Mother gave conflicting testimony on who she would live with when she was released from incarceration. Mother stated she would live with a friend, but also stated her "family plan" says she will live with Aunt and Uncle. However, D.S. testified she did not believe Aunt and Uncle would allow Mother to live with them. As the sole judge of the witnesses' credibility and the testimony's weight, the trial court was within its right to accept or reject any part or all of Mother's testimony and believe D.S. *Alonso v. Alvarez*, 409 S.W.3d 754, 757 (Tex. App.—San Antonio 2013, pet. denied).

consideration for the child's present and future physical and emotional needs."). Escobar testified Aunt and Uncle expressed a desire to adopt Amy and have bonded with her. D.S. testified Amy is thriving in her current placement because of the exemplary efforts by Aunt and Uncle to accommodate and care for her. D.S. elaborated Aunt and Uncle have "jumped through hoops" and are ready, willing, and eager to do whatever it takes to care for Amy and provide her with a safe and stable home. *See In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.) ("The stability of the proposed home environment is an important consideration in determining whether termination is in the child's best interest."). For example, D.S. stated Amy came to Aunt and Uncle with significant issues regarding constipation and mobility of her neck. D.S. testified Amy has made substantial improvement with these issues because of Aunt and Uncle's care and attention to her needs. D.S. further testified that termination was in Amy's best interest. *See In re A.M.M.*, 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied) (mem. op.) (indicating evidence the child is "thriving in the current placement" in a "stable and nurturing environment with a planned adoption" supported the trial court's best-interest determination.).

Based on the evidence presented, the trial court could have formed a firm belief or conviction that Mother was unable to serve Amy's present and future emotional and physical needs, Mother's past conduct indicated she would pose a danger to Amy, and Mother was unable to provide Amy with a stable and safe home.

*History of Abusive or Assaultive Conduct*

As previously mentioned, Mother admitted she had pled guilty and was convicted of injury to two of her other children. Mother also admitted she was currently incarcerated because she was convicted of driving while intoxicated with Amy in the vehicle and conceded she was, in fact, intoxicated at the time of the incident. Escobar testified this incident also constituted a violation

of her parole for a previous charge of child abuse. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (citing a parent's prior charges of injury to a child in conclusion that termination was in the child's best interest). Although the testimony was not well developed, Escobar also indicated Mother had a history of substance abuse with alcohol. *See* TEX. FAM. CODE ANN. § 263.307(b)(8) (providing courts may consider history of substance abuse by child's family in determining best interests).

Based on this evidence, the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in Amy's best interest due to Mother's abusive past.

*Parental Abilities, Programs, and Acts or Omissions*

Escobar testified Mother was given a service plan that included parenting courses, a drug assessment, and individual counseling. Escobar stated Mother participated in a substance abuse class and engaged in Alcoholics Anonymous ("AA") meetings from December 2019 to February 2020. However, Mother ceased to attend AA meetings after February 2020. Escobar stated Mother did not seek individual counseling and failed to complete the parenting courses required by the service plan. When Escobar asked Mother why she did not complete her other services, Mother stated the parenting opportunities available to her at the Bexar County Annex were "fickle" and "the schedule kept changing." Mother also told Escobar there was not adequate individual counseling available at the Bexar County Annex. Escobar further testified Mother did not complete her drug assessment through OSAR[8] and has not entirely dealt with the alcohol issues that led to Amy's removal. Because Mother has not shown significant improvement in completing her service plan, Escobar opined Mother has not demonstrated an ability to change her behavior and cannot meet Amy's physical and emotional needs. Mother testified she could not complete

---

[8] Outreach, Screening, Assessment & Referral

her services because of scheduling issues arising from the COVID pandemic, but that she was willing to complete her services if given the opportunity. "However, a trial court is not bound to accept the truth or accuracy of a parent's testimony, either as to past actions or future intentions." *See D.M.*, 452 S.W.3d at 472.

Based on this evidence, the trial court could have formed a firm belief or conviction that Mother did not comply with the terms of her service plan that were attainable.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights is in Amy's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail the evidence if affirming a termination judgment). Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

CONCLUSION

The trial court's judgment is affirmed.

Irene Rios, Justice